# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

D.R., as a minor through parent and next friend Dawn Richardson, A.K., as a minor through parent and next friend, Angy Keelin, C.D.M., as a minor through parent and next friend Crystal McCadden, C.M., as a minor through parent and next friend Crystal McCadden, J.T., as a minor through parent and next friend Nakiya Wakes, N.S, as a minor through parent and next friend Nakiya Wakes, J.W., as a minor through parent and next friend Kathy Wright, C.D., as a minor through parent and next friend Twanda Davis, D.K. as a minor through parent and next friend Rachel Kirksey, M.K. as a minor through parent and next friend Rachel Kirksey, O.N., as a minor through parent and next friend Manita Davis, D.T. as a minor through parent and next friend Manita Davis, D.D. as a minor through parent and next friend Willie Daniels, C.W. as a minor through parent and next friend Chandrika Walker, J.B. as a minor through parent and next friend Jeree Brown, individually and on behalf of all similarly situated persons,

     Plaintiffs,

v.

Michigan Department of Education, Genesee Intermediate School District, Flint Community Schools,
     Defendants.

_____/

No. 16-CV-13694-AJT-APP

Hon. Arthur J. Tarnow

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Kary L. Moss (P49759)
Kristin L. Totten (P72942)
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
ACLU Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201

Timothy J. Haynes (P41196)
Travis M. Comstock (P72025)
Katherine J. Bennett (P75913)
*Attorneys for Defendant Michigan Department of Education* Michigan Department of Attorney General Health, Education & Family Services

1

(313) 578-6800
kmoss@aclumich.org
ktotten@aclumich.org
dkorobkin@aclumich.org
msteinberg@aclumich.org

Gregory M. Starner
Lindsay M. Heck
Walter A. Ciacci
Dominique N. Forrest
Laura A. Grai
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787
(212) 819-8200
gstarner@whitecase.com
lindsay.heck@whitecase.com
walter.ciacci@whitecase.com
dominique.forrest@whitecase.com
laura.grai@whitecase.com

David G. Sciarra
Gregory G. Little
Jessica A. Levin
Education Law Center
60 Park Place, Suite 300
Newark, NJ  07102
(973) 624-1815
dsciarra@edlawcenter.org
jlevin@edlawcenter.org
glittle@edlawcenter.org
Counsel for Plaintiffs

_____/

Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
haynest3@michigan.gov
comstockt@michigan.gov
BennettK1@michigan.gov

Timothy J. Mullins (P28021)
John L. Miller (P71913)
Giarmarco, Mullins & Horton, P.C.
*Attorneys for Defendant Genesee
Intermediate School District*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com

Donald B. Miller (P23419)
Frederick A. Berg, Jr. (P38002)
James S. Rosenfeld (P39434)
Brett J. Miller (P68612)
Michael Griffie (P79836)
Hannah Treppa (P80978)
Butzel Long, a professional corporation
*Attorneys for Defendant Flint
Community Schools*
150 W. Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7020
miller@butzel.com
berg@butzel.com
rosenfeld@butzel.com
millerbr@butzel.com
griffie@butzel.com
treppa@butzel.com

## **PLAINTIFFS' BRIEF IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs respectively ask that this Court deny the motions to dismiss of Defendant Michigan Department of Education (MDE) and Defendant Flint Community School District (FCS) and the motion for judgment on the pleadings of Genesee Intermediate School District (GISD). Plaintiffs state in support:

1.      Plaintiffs seek declaratory and injunctive relief to order Defendants' compliance with their obligations under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, § 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, Title II of the Americans with Disabilities Act (Title II), 42 U.S.C. § 12131 *et seq.*, and Michigan law. Each of the Defendants has failed in its obligations to the Plaintiff class, and these failures have only been amplified by the lead crisis.

2.      Count I of the Complaint sets forth four systemic violations under the IDEA by each Defendant. All Defendants have failed to develop and implement appropriate child find procedures, have failed to provide a free appropriate public education in the least restrictive environment, have failed to protect students' due process procedural safeguards in the disciplinary process, and have discriminated on the basis of disability and unjustly denied Plaintiffs' access to educational services. (Dkt. No. 1; Compl. at ¶¶ 349 – 384).

3.      Count II alleges that all Defendants have discriminated against Plaintiffs based on disability in violation of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* (Compl. at ¶¶ 385 – 388). Plaintiffs have impermissibly been denied access to essential services and programming that is available to non-disabled students solely on the basis of their disabilities.

4.      Count III states that all Defendants have exercised gross misjudgment and discriminated against Plaintiffs and similarly situated children in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* by denying them access to essential services and programming that is available to non-disabled students solely on account of their disabilities and/or behaviors related to those disabilities. (Compl. at ¶¶ 389 – 391).

5.      Count IV alleges that Defendants FCS and GISD have violated Michigan law by failing to provide a free and appropriate public education and by not providing each child with programs and services designed to develop his or her maximum potential. (Compl. at ¶¶ 392 – 394).

6.      Defendants' motions to dismiss and motion for judgment on the pleadings should be denied because Plaintiffs have alleged multiple causes of action with sufficient detail to satisfy the pleading standards at this early stage of the proceedings. Defendants primarily argue that Plaintiffs are required to exhaust all administrative remedies before they bring suit, that Plaintiffs lack standing, and

that Plaintiffs have failed to state a claim. Each of these arguments fail, as exhaustion is not required, Plaintiffs have standing, and the Complaint alleges sufficient facts that, taken together, give rise to a plausible inference that Defendants are liable for the misconduct alleged.

7.      Exhaustion is not required when it would be futile to exhaust. Such futility exists when a plaintiff alleges systemic violations that cannot be resolved through the administrative process. As described previously, Plaintiffs have alleged systemic violations, none of which can be adequately resolved through the administrative process. Each requires system-wide reforms by Defendants, and individual resolution of claims would be cost prohibitive, slow, and ultimately ineffective to redress Plaintiffs' claims.

8.      Exhaustion is also not required when an emergency situation exists. The lead disaster and its fallout constitute an ongoing crisis, the effects of which may not be fully realized for years to come. Immediate relief is required, and exhaustion of administrative remedies cannot provide the swift and comprehensive relief to which Plaintiffs are entitled.

9.      Plaintiffs have standing to bring their Complaint. MDE has specific and direct responsibility to ensure the provision of special education services in the State of Michigan and compliance by local educational entities such as FCS and GISD with special education and anti-discrimination law. Its failure to fulfill this

role violates Plaintiffs' rights under the IDEA, Section 504, and the ADA. Further, each of the three elements of standing is satisfied in the Complaint: Plaintiffs allege injury under federal special education and anti-discrimination statutes, Plaintiffs' injuries are fairly traceable to the MDE, and Plaintiffs' injuries are capable of redress through judicial relief. Contrary to FCS's contention, Plaintiffs have standing to sue for all requested relief, including appropriate screenings.

10.    The Eleventh Amendment poses no hurdle for Plaintiffs' claims against MDE because Title II of the ADA validly abrogates state sovereign immunity.

11.    Plaintiffs have stated a claim upon which relief can be granted under the *Iqbal-Twombly* standard. Plaintiffs' IDEA claims are properly pled, as Plaintiffs describe the specific ways in which all Defendants have failed to comply with the IDEA. Plaintiffs also provide detailed allegations specific to each Plaintiff that illustrate how the failures of all Defendants have harmed students on a daily basis. Plaintiffs, in alleging both discriminatory intent and discriminatory effect, have also properly pled their Title II ADA and Section 504 claims.

12.    Contrary to Defendant GISD's argument, Plaintiffs have not made a claim for "educational malpractice." GISD has mischaracterized Plaintiffs' state-law claims, citing an inapposite doctrine against negligence. Since Plaintiffs have not brought a separate negligence cause of action and are seeking only declarative

and injunctive relief, Plaintiffs' state-law claim survives.

WHEREFORE, for the reasons set forth more fully in the attached Brief, Plaintiffs ask that this court deny Defendants' Motions to Dismiss and Motion for Judgment on the Pleadings.

Respectfully submitted,

By: /s/ Daniel S. Korobkin

| | |
|---|---|
| Kary L. Moss (P49759) | Gregory M. Starner |
| Kristin L. Totten (P72942) | Lindsay M. Heck |
| Daniel S. Korobkin (P72842) | Walter A. Ciacci |
| Michael J. Steinberg (P43085) | Dominique N. Forrest |
| ACLU Fund of Michigan | Laura A. Grai |
| 2966 Woodward Ave. | 1155 Avenue of the Americas |
| Detroit, MI 48201 | New York, NY 10036-2787 |
| (313) 578-6800 | (212) 819-8200 |
| kmoss@aclumich.org | gstarner@whitecase.com |
| ktotten@aclumich.org | lindsay.heck@whitecase.com |
| dkorobkin@aclumich.org | walter.ciacci@whitecase.com |
| msteinberg@aclumich.org | dominique.forrest@whitecase.com |
| | laura.grai@whitecase.com |
| David G. Sciarra | |
| Gregory G. Little | |
| Jessica A. Levin | |
| Education Law Center | |
| 60 Park Place, Suite 300 | |
| Newark, NJ 07102 | *Counsel for Plaintiffs* |
| (973) 624-1815 | |
| dsciarra@edlawcenter.org | |
| glittle@edlawcenter.org | |
| jlevin@edlawcenter.org | |

Dated: January 13, 2017

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

D.R., as a minor through parent and next
friend Dawn Richardson, A.K., as a minor
through parent and next friend, Angy
Keelin, C.D.M., as a minor through parent
and next friend Crystal McCadden, C.M.,
as a minor through parent and next friend
Crystal McCadden, J.T., as a minor through
parent and next friend Nakiya Wakes, N.S,
as a minor through parent and next friend
Nakiya Wakes, J.W., as a minor through
parent and next friend Kathy Wright, C.D.,
as a minor through parent and next friend
Twanda Davis, D.K. as a minor through
parent and next friend Rachel Kirksey,
M.K. as a minor through parent and next
friend Rachel Kirksey, O.N., as a minor
through parent and next friend Manita
Davis, D.T. as a minor through parent and
next friend Manita Davis, D.D. as a minor
through parent and next friend Willie
Daniels, C.W. as a minor through parent
and next friend Chandrika Walker, J.B. as a
minor through parent and next friend Jeree
Brown, individually and on behalf of all
similarly situated persons,

     Plaintiffs,

v.

Michigan Department of Education,
Genesee Intermediate School District, Flint
Community Schools,
     Defendants.

_____/

No. 16-CV-13694-AJT-APP

Hon. Arthur J. Tarnow

**PLAINTIFFS' BRIEF IN
SUPPORT OF
OPPOSITION TO
DEFENDANTS'
MOTIONS TO DISMISS
AND MOTION FOR
JUDGMENT ON THE
PLEADINGS**

Kary L. Moss (P49759)
Kristin L. Totten (P72942)
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
ACLU Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201

Timothy J. Haynes (P41196)
Travis M. Comstock (P72025)
Katherine J. Bennett (P75913)
*Attorneys for Defendant Michigan
Department of Education* Michigan
Department of Attorney General
Health, Education & Family Services

1

(313) 578-6800
kmoss@aclumich.org
ktotten@aclumich.org
dkorobkin@aclumich.org
msteinberg@aclumich.org

Gregory M. Starner
Lindsay M. Heck
Walter A. Ciacci
Dominique N. Forrest
Laura A. Grai
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787
(212) 819-8200
gstarner@whitecase.com
lindsay.heck@whitecase.com
walter.ciacci@whitecase.com
dominique.forrest@whitecase.com
laura.grai@whitecase.com

David G. Sciarra
Gregory G. Little
Jessica A. Levin
Education Law Center
60 Park Place, Suite 300
Newark, NJ  07102
(973) 624-1815
dsciarra@edlawcenter.org
jlevin@edlawcenter.org
glittle@edlawcenter.org
Counsel for Plaintiffs

_____/

Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
haynest3@michigan.gov
comstockt@michigan.gov
BennettK1@michigan.gov

Timothy J. Mullins (P28021)
John L. Miller (P71913)
Giarmarco, Mullins & Horton, P.C.
*Attorneys for Defendant Genesee Intermediate School District*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com

Donald B. Miller (P23419)
Frederick A. Berg, Jr. (P38002)
James S. Rosenfeld (P39434)
Brett J. Miller (P68612)
Michael Griffie (P79836)
Hannah Treppa (P80978)
Butzel Long, a professional corporation
*Attorneys for Defendant Flint Community Schools*
150 W. Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7020
miller@butzel.com
berg@butzel.com
rosenfeld@butzel.com
millerbr@butzel.com
griffie@butzel.com
treppa@butzel.com

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Kary L. Moss (P49759)
Kristin L. Totten (P72942)
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
ACLU Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6800
kmoss@aclumich.org
ktotten@aclumich.org
dkorobkin@aclumich.org
msteinberg@aclumich.org

David G. Sciarra
Gregory G. Little
Jessica A. Levin
Education Law Center
60 Park Place, Suite 300
Newark, NJ 07102
(973) 624-1815
dsciarra@edlawcenter.org
glittle@edlawcenter.org
jlevin@edlawcenter.org

Dated:  January 13, 2017

Gregory M. Starner
Lindsay M. Heck
Walter A. Ciacci
Dominique N. Forrest
Laura A. Grai
1155 Avenue of the Americas
New York, NY 10036-2787
(212) 819-8200
gstarner@whitecase.com
lindsay.heck@whitecase.com
walter.ciacci@whitecase.com
dominique.forrest@whitecase.com
laura.grai@whitecase.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................. **Error! Bookmark not defined.**

COUNTERSTATEMENT OF THE ISSUES PRESENTED ................................ viii

STATEMENT OF CONTROLLING AUTHORITY ............................................. ix

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ...............................................................................4

    A.    The Flint Lead Crisis and Its Devastating Impact on an Already-Vulnerable Population...............................................................4

    B.    Defendants' Duties Under Federal and State Law................................6

    C.    Defendants Are Systemically Failing to Meet Their Obligations Under Federal and State Laws. ............................................................7

        1.    Defendants Have Systemically Failed to Develop and Properly Implement Child Find Procedures. .............................8

        2.    Defendants Have Systemically Failed to Provide a Free Appropriate Public Education in the Least Restrictive Environment.................................................................................9

        3.    Defendants Have Systemically Failed to Provide Students with Procedural Safeguards in the Disciplinary Process. ...................................................................................10

        4.    Defendants Are Discriminating and Denying Access to Educational Services on the Basis of Disability. ......................11

ARGUMENT ...................................................................................................13

I.    Exhaustion Is Not Required Because It Would Be Futile to Exhaust Administrative Remedies. ............................................................................13

    A.    Exhaustion Is Not Required Because Plaintiffs Allege Systemic Violations that Cannot be Remedied through the Administrative Process.................................................................................................13

    B.    Exhaustion Is Not Required Because an Emergency Situation Exists. ................................................................................................24

II.    Plaintiffs Have Standing to Sue for Violations of IDEA, Section 504 and the ADA. ..............................................................................................26

i

A.  Plaintiffs Allege Injury-in-Fact from the MDE's Failure to Fulfill its Obligations Under the IDEA, Section 504 and the ADA. .........................................................................................27

    1.  SEAs are obligated to ensure the provision of special education in compliance with IDEA, Section 504 and the ADA. .....................................................................28

    2.  Plaintiffs allege concrete and substantive injuries from MDE's failure to fulfill its enumerated duties under IDEA, Section 504 and the ADA ................................32

        a.  Injuries under IDEA .......................................33

        b.  Injuries under Section 504 and ADA ............................38

B.  Plaintiffs' Injuries are Fairly Traceable to MDE's Failure to Fulfill its Duties Under Special Education and Anti-Discrimination Laws. ...........................................................40

C.  Plaintiffs' Injuries will be Redressed by the Relief Requested in the Complaint. ...................................................43

D.  Plaintiffs Also Have Standing to Sue FCS for Failure to Conduct Appropriate Screenings. ......................................46

III.  The Eleventh Amendment Does Not Bar Plaintiffs' Claims Against MDE..........................................................................48

IV.  Plaintiffs Have Set Forth Sufficient Facts to Satisfy the Pleading Standards of *Twombly* and *Iqbal*. ....................................51

A.  IDEA Claims Are Properly Pled. ......................................51

B.  Title II ADA and Section 504 Claims Are Properly Pled..................56

V.  Plaintiffs' State-Law Claim Is Not for Educational Malpractice..................58

CONCLUSION ....................................................................60

CERTIFICATE OF SERVICE .......................................................61

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.A. v. Bd. of Educ.*, 196 F. Supp. 2d 259 (E.D.N.Y. 2002) .....................................24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................52, 54

*Assn'n for Disabled Ams. v. Fla. Int'l Univ.*, 405 F.3d 954 (11th Cir. 2005) ......................................................................................................49

*B.C. v. Mount Vernon Sch. Dist.*, No. 14-3603-CV, 2016 WL 4945421 (2d Cir. Sept. 16, 2016) (unpublished) (Ex.5) .............................................43, 45

*Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016) ................................................50

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................52

*Beno v. Shalala*, 30 F.3d 1057 (9th Cir. 1994) ........................................................44

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524 (3d Cir. 2007) ...............48

*Campbell v. Bd. Of Educ. of the Centerline Sch. Dist.*, 58 F. App'x 162 (6th Cir. 2003) (Ex. 7) ...................................................................57

*Carten v. Kent State Univ.*, 282 F.3d 391 (6th Cir. 2002) ......................................51

*Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 516 (E.D. Pa. 2014) .......................................................................................................42

*Coleman v. Newburgh*, 503 F.3d 198 ..............................................................24, 25

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) .................................................................................49

*D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553 (3d Cir. 2010) ..............................36, 37

*Dean v. Univ. at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178 (2d Cir. 2015) ...............................................................49

*Dixon v. Hamilton City Sch.*, 1999 U.S. Dist. LEXIS 21388 (S.D. Ohio Nov. 4, 1999) (Ex.3) .................................................................14

iii

*Doe v. Arizona Dep't of Educ.*, 111 F.3d 678 (9th Cir. 1997)...........................55, 56

*Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262 (10th Cir. 2007) ........................42

*F.H. v. Memphis City Schs.*, 764 F.3d 638 (6th Cir. 2014) ....................................14

*Found. v. Gates*, 573 F.3d 797 (D.C. Cir. 2009) ..................................................45

*Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475 (N.D. Ohio 2007).........................49

*Gadsby v. Grasmick,* 109 F.3d 940 (4th Cir. 1997)..................................................43

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) ..............................52

*Hendricks v. Gilhool*, 709 F. Supp. 1362 (E.D. Pa. 1989) .....................................24

*J.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004) ....................................14, 15

*Jose P. v. Ambach*, 669 F.2d 865 (2d Cir. 1982) ....................................................24

*Komninos v. Upper Saddle River Bd. Of Educ.,* 13 F.3d 775 (3d Cir.
   1994) .......................................................................................................24, 25

*Lexmark Itn'l, Inc. v. Static Control Components, Inc.*, 572 U.S. __,
   134 S. Ct. 1377 (2014).........................................................................................42

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).............................27, 28, 33

*M.A. v. State Operated Sch. Dist. of Newark*, 344 F.3d 335 (3d Cir.
   2003) ...............................................................................................................24, 42

*M.G. v. N.Y. City Dep't of Educ.*, 162 F. Supp. 3d 216, 242 (S.D.N.Y.
   2016) .......................................................................................................................23

*McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012) .....................................52

*Modd v. Cty. of Ottawa*, 2010 WL 5860425 (W.D. Mich. Aug. 4,
   2010) (Ex. 6) ..........................................................................................................52

*Nelson v. Miller*, 170 F.3d 641 (6th Cir. 1999) ......................................................51

*New Mexico Ass'n for Retarded Citizens v. N.M.*, 678 F.2d 847 (10th
   Cir. 1982) ...............................................................................................................24

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011).........................52

*Page v. Klein Tools, Inc.*, 610 N.W. 2d 900 (Mich. 2000) ................................. 58, 59

*Pachl v. Seagren*, 453 F.3d 1064 (8th Cir. 2006) .................................................... 37

*Parsons v. U.S. Dep't of Justice*, 801 F.3d 701 (6th Cir. 2015) ...................... passim

*Rose v. Yeaw*, 214 F.3d 206 (1st Cir. 2000) ............................................................ 24

*S. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 91589 ............................... passim

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ............................ 42, 44

*T.H. v. Cincinnati Pub. Sch. Dist. Bd. Of Ed*, 2014 U.S. Dist. LEXIS
    87698 (S.D. Ohio June 27, 2014) (Ex.4) .......................................................... 25

*Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006) ...................................................... 49

*Ullmo v. Gilmour Acad.*, 273 F.3d 671 (6th Cir. 2001) ......................... 37, 42, 43, 45

*U.S. v. Ga.*, 546 U.S. 151 (2006) ........................................................................... 48

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252
    (1977) ................................................................................................................ 42

*W.H. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 7206 ........................... passim

*Warth v. Seldin,* 422 U.S. 490 (1975) .................................................................... 28

*Woolcott v. State Bd. of Educ.*, 351 N.W.2d 601 (Mich. App. 1984) ..................... 59

## STATUTES AND RULES

20 U.S.C. 1401 ...................................................................................................... 9, 17

20 U.S.C. § 1407(a)(1) ............................................................................................ 28

20 U.S.C. § 1412(a)(1)(A) ................................................................................. passim

20 U.S.C. 1413 ................................................................................................... passim

20 U.S.C. § 1414(a)(1) ...................................................................................... passim

20 U.S.C. § 1415 ....................................................................................... 11, 18, 23

29 U.S.C. § 794 ................................................................................................. passim

42 U.S.C. § 12101 *et seq.* ........................................................................................12

42 U.S.C. § 12131(1) ...............................................................................................33

42 U.S.C. § 12132 ...............................................................................6, 7, 23, 33

28 C.F.R. § 35.130 ............................................................................................32, 42

28 C.F.R. § 504 ........................................................................................................42

34 C.F.R. § 104 ...........................................................................................12, 32, 42

34 C.F.R. § 300.8(c)(9)(i) .........................................................................................9

34 C.F.R. § 300.101(a) ..............................................................................................9

34 C.F.R. § 300.110 .....................................................................................12, 23, 29

34 C.F.R. § 300.111(a)(1)(i) .................................................................................8, 17

34 C.F.R. § 300.112, §§ 300.320-24 .........................................................................9

34 C.F.R. § 300.114(a)(2) .......................................................................................10

34 C.F.R. § 300.301 ...............................................................................................8, 17

34 C.F.R. § 300.304(c)(4) ........................................................................................18

34 C.F.R. § 300.600(a)(1)-(2) .............................................................................30, 31

34 CFR §§ 300.530 - 300.536 ..................................................................................23

34 C.R.F § 300.600(a)(4) .........................................................................................31

Mich. Comp. Laws § 16.405 .....................................................................................51

Mich. Comp. Laws § 380.1701, *et seq.* ..................................................................59

Mich. Comp. Laws § 380.1711(1)(h) ....................................................................6, 58

Mich. Comp. Laws §§ 380.1711, 380.1751 ..............................................................59

Mich. Comp. Laws § 380.1751(1) .............................................................................7

# MISCELLANEOUS

Eleventh Amendment.......................................................................48, 50, 51

H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985) ..................................25

U.S. Constitution Article III........................................................27, 28, 42

## **COUNTERSTATEMENT OF THE ISSUES PRESENTED**

1. Plaintiffs are not required to exhaust administrative remedies before bringing their claims against Defendants because exhaustion would be futile. The Complaint alleges facts to support claims of systemic violations and the Flint water crisis presents an emergency situation.

2. Plaintiffs have standing to sue because they have alleged injury-in-fact, causation, and redressability.

3. The Eleventh Amendment does not bar Plaintiffs' claims against Defendant MDE because Title II of the ADA validly abrogates state sovereign immunity.

4. Plaintiffs have alleged sufficient facts to satisfy the pleading standards of *Twombly* and *Iqbal*, placing Defendants on fair notice of their claims and the grounds for these claims.  Plaintiffs have provided detailed, specific factual allegations outlining Defendants' failure to comply with the IDEA and alleging discriminatory intent and discriminatory effect under Title II of the ADA and Section 504.

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Plaintiffs rely on the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and Mich. Comp. Laws § 380.1701 *et seq.* to establish the framework of rules, standards, and obligations which Defendants owe to Plaintiffs related to their education as students who have or who may develop a disability.

Plaintiffs rely on *F.H. v. Memphis City Sch.*, 764 F.3d 638 (6th Cir. 2014), *J.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004), *W.H. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 7206 (M.D. Tenn. Jan. 20, 2016) (Ex. 1) , and *N.S. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 91589 (M.D. Tenn. July 14, 2016) (Ex.2), for the rule that exhaustion is not required when it would be futile to exhaust administrative remedies. Specifically, these cases demonstrate that exhaustion is not required when plaintiffs allege systemic violations that cannot be remedied by the administrative process. Plaintiffs rely on *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198 (2d Cir. 2007), for the point that exhaustion is not required when an emergency situation exists.

Plaintiffs rely on *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), to demonstrate that they have sufficiently alleged injury-in-fact, causation, and redressability.

Plaintiffs rely on *United States v. Georgia*, 546 U.S. 151 (2006), *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 556 (3d Cir. 2007), *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006), *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005), and *Assn'n for Disabled Ams. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005), to demonstrate that the Eleventh Amendment is no bar to Plaintiffs' claims against the Michigan Department of Education because Title II of the ADA validly abrogates state sovereign immunity.

Plaintiffs rely on *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to demonstrate that they have satisfied the pleading standards required to defeat a motion to dismiss.

## INTRODUCTION

When State officials switched Flint's water supply to the Flint River as a cost-cutting measure in April 2014, the parents and guardians of the approximately 30,000 children residing in the community could not have known that poison would soon pour out of their faucets. They also did not know that the lead in their water would place their children's cognitive development and ability to learn and succeed in school gravely at risk. And those same parents and guardians could not have imagined that, over two years later, the governmental entities entrusted with the education of their children would attempt to absolve themselves of all responsibility by claiming they had done enough, and oppose efforts to secure relief for those children already entitled to special education services and those at risk of a disability and in need of such services.

In moving to dismiss Plaintiffs' class action complaint, Defendants Michigan Department of Education (MDE), Genesee Intermediate School District (GISD), and Flint Community Schools (FCS) argue that the individual members of the plaintiff class should have exhausted administrative remedies; do not have standing to sue; and have failed to state a claim. Defendants are wrong on all counts. The Complaint, through its detailed allegations, chronicles the ongoing and severe educational depravation endured by the families of children with disabilities in the Flint schools and the obstacles they encounter in the pursuit of a meaningful

education for their children. Under the Individuals with Disabilities Education Act (IDEA), Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and Michigan law, Defendants are responsible for providing to Plaintiffs and the plaintiff class a free and appropriate public education and non-discriminatory access to services and programs designed to enable them to achieve their maximum potential. Yet Defendants have systemically failed to carry out their responsibilities as prescribed by federal and state law, and Flint's lead crisis has only made those failures more egregious.

MDE asserts "there is no real connection" between the Flint lead crisis and "Plaintiffs' favored changes to delivery of special education in Michigan." (MDE Br. at 1). If MDE agreed that there existed severe and systemic deficiencies in the delivery of special education in Flint well before the water crisis, the agency would be correct. But MDE blindly overlooks the myriad ways in which the lead poisoning inflicted on Flint children has compounded the problems with special education in the Flint schools and will exacerbate those problems going forward. There is simply no safe level of lead exposure for children, and, as documented throughout the Complaint, even exposure to low levels is associated with learning deficits, memory loss, behavioral issues, and reduced outcomes for students. As Michigan's state educational agency (SEA), MDE bears the ultimate responsibility under federal law to ensure that Flint's public schools provide special education

services to all eligible students and those students subjected to the lead crisis who are now – and will be – in need of such services.

Defendants would have each Plaintiff embark upon an individualized administrative exhaustion process that would drag on for months, if not years. But administrative exhaustion is not required where it would be futile because systemic violations are at issue and where an emergency exists. Both of these exceptions apply with full force here. The plaintiff class also has standing to sue, as Plaintiffs demonstrate injuries that are fairly traceable to each defendant and which judicial redress can, and must, remedy. Taken as a whole, and drawing all reasonable inferences from the pleaded factual allegations in the light most favorable to Plaintiffs, the Complaint describes systemic violations of federal and state law governing special education and an ongoing pattern and practice of discrimination against students with disabilities. At this early, pre-discovery stage of the case, it is readily apparent on the face of the Complaint that Plaintiffs have satisfied the pleading standards necessary to withstand a motion to dismiss.

Lastly, FCS denigrates the Complaint as nothing more than a "wish-list for the legislature." (FCS Br. at 30). This argument neglects to recognize the mandates of federal and state law with which Defendants are manifestly failing to comply. This Court, therefore, represents the only effective guarantor of Plaintiffs' education rights and possesses the requisite authority to systematically remedy

violations of those rights.  Accordingly, Defendants' motions to dismiss should be denied.

## FACTUAL BACKGROUND

### A.   The Flint Lead Crisis and Its Devastating Impact on an Already-Vulnerable Population

Even before the state-created lead crisis, Flint, Michigan was a community in dire circumstances: the region has lost 41% of employment since 1980, 40% of residents live in poverty, and essential education and public health services have deteriorated alongside the economy. Compl. at ¶ 2 & n. 1. Among Flint's hardest hit citizens are the most vulnerable: children. The 42% childhood poverty rate in Flint is nearly three times the nationwide average of 14.8%. Compl. at ¶ 2. And Flint's public education system is failing, with rapidly declining enrollment, low graduation rates, and high drop-out rates. Compl. at ¶ 3. Faced with insurmountable deficits, Flint has reduced staff, programs, and services, consigning students to under-resourced and overcrowded classrooms and schools. Compl. at ¶¶ 3, 82-86.

In April 2014, Flint was dealt another crippling blow when State officials changed its water source to the Flint River, exposing Flint's residents to lead-contaminated water for a period of at least 18 months. Among those exposed were 30,000 children between the ages of zero and 19, each of whom is now at risk of developing a disability or having existing disabilities exacerbated. Compl. at ¶¶ 8,

4

11, 60. A February 2016 study conducted by Hurley Medical Center found that the incidence of elevated blood lead levels in Flint had doubled, and every single school in Flint had water samples that testified positive for lead. Compl. at ¶¶ 61, 71. Put simply, exposure to lead was chronic, toxic, and community-wide. Compl. at ¶ 70.

Lead is a confirmed potent neurotoxin, and research indicates no level of exposure to it is safe. Compl. at ¶¶ 62- 63. In fact, even very low levels of exposure are associated with learning and behavioral deficits in children. Compl. at ¶¶ 62-63. Exposure to lead, as occurred in Flint, can – and will – profoundly alter the trajectory of children's lives. Children exposed to lead face myriad potential problems, including lowered intelligence, slowed growth and development, learning and behavioral challenges, memory loss, poor academic performance, attention deficit hyperactivity disorder (ADHD), hearing and speech problems, aggression, juvenile delinquency, and criminal behavior. Compl. at ¶¶ 64-66. Flint's children, who suffer from multiple factors that increase their exposure to lead – poor nutrition, concentrated poverty, old housing stock, and scarce resources for alternative water sources – are particularly vulnerable. Compl. at ¶¶ 68-69. Without a comprehensive and proactive response from Defendants, the exposure to lead, when coupled with these other risk factors, will irrevocably narrow Flint's children's prospects for leading healthy and productive lives.  Indeed, they will

find themselves trapped in a cycle of poverty, without opportunities for self-empowerment and upward mobility not only for them but also for generations to come. Compl. at ¶¶ 5-6.

### B.    Defendants' Duties Under Federal and State Law

As Michigan's SEA, Defendant MDE bears ultimate responsibility for ensuring that all public schools in Michigan comply with the IDEA. 20 U.S.C. § 1412(a)(11)(A). Additionally, as a "program or activity" provider under Section 504 of the Rehabilitation Act and a "public entity" under Title II of the ADA, MDE is obligated to ensure compliance with both Acts, which prohibit discrimination against students with disabilities. 29 U.S.C. § 794(b); 42 U.S.C. § 12132(1)(A).

Defendant GISD is the intermediate school district responsible for overseeing special education services for public school children in Flint. Under Michigan law, GISD is responsible for providing federal, state, and local funds to FCS for special education, coordinating the delivery of special education services, and investigating special education programs and services. Mich. Comp. Laws § 380.1711(1)(h). GISD is also a "program or activity" provider under Section 504 of the Rehabilitation Act and a "public entity" under Title II of the Americans with Disabilities Act ("ADA"), and thus is also obligated to ensure compliance with both Acts. 29 U.S.C. § 794; 42 U.S.C. § 12132.

Defendant FCS is a public school district in Flint and is required under Michigan law to provide "special education programs and services designed to develop the maximum potential of each student with a disability in its district … for whom an appropriate educational or training program can be provided in accordance with the intermediate school district special education plan." Mich. Comp. Laws § 380.1751(1). FCS is a local educational agency ("LEA") under IDEA and therefore is responsible for the provision of special education in a manner consistent with IDEA. 20 U.S.C. §1414(a)(1). FCS is also a "program or activity" provider under Section 504 of the Rehabilitation Act and a "public entity" under Title II of the ADA, and thus is obligated to ensure compliance with both Acts. 29 U.S.C. § 794(b); 42 U.S.C. § 12132(1)(A).

### C.    Defendants Are Systemically Failing to Meet Their Obligations Under Federal and State Laws.

As the Complaint details, Defendants are failing on a systemic basis to provide Flint's students with disabilities the services to which they are entitled under federal and state law. Defendants' systemic failures include failing to develop and implement "child find" procedures to identify and evaluate students with disabilities; failing to provide a free appropriate public education (FAPE) in the least restrictive environment (LRE); failing to protect students' due process procedural rights during the disciplinary process; and discriminating against and denying educational services to children on the basis of disabilities.

7

### 1. Defendants Have Systemically Failed to Develop and Properly Implement Child Find Procedures.

Pursuant to the IDEA, each state must effectuate policies and procedures that ensure all children within that state who have disabilities and who require special education and related services are identified, located, and evaluated. 20 U.S.C. §1412(a)(3)(A); 34 C.F.R. § 300.111(a)(1)(i). To be eligible for services under the IDEA, a child must receive an initial evaluation conducted by a SEA or LEA. 20 U.S.C. § 1414(a)(1)(A); 34 C.F.R. §300.301(a). The initial evaluation must determine whether the child has a disability and what the educational needs of that child are. 20 U.S.C. § 1414(a)(1)(C)(i); 34 C.F.R. § 300.301(c)(2). This identification and evaluation process is referred to as "child find."

Defendants have failed to ensure that the prescribed comprehensive child find procedures are developed and implemented in the Flint schools. FCS and GISD are engaged in a pattern and practice of not providing screening and timely referrals for evaluations to identify children with qualifying disabilities, as demonstrated by the experiences of all named Plaintiffs. Compl. at ¶¶ 90-348. Additionally, MDE fails to appropriately monitor, conduct oversight, and provide FCS and GISD with the resources and expertise they need to perform the required evaluations. Compl. at ¶¶ 94, 98, 100, 113, 116, 131,134,146, 157, 165, 170-74, 194, 197, 202, 211, 218-23, 226-32, 241, 258, 260, 261, 270, 282-83, 344-46, 365. As a result, children with disabilities and at risk of a disability remain unidentified

and are denied the educational services to which they are legally entitled under IDEA and anti-discrimination law.

These failures are compounded in Flint, where every child was exposed to elevated lead levels over an extended timeframe. As Plaintiffs allege, Defendants' child find procedures have failed to respond to this crisis. Defendants still systematically fail to provide early screening and timely referrals for three- and four-year-olds residing in Flint and systematically fail to provide appropriate early intervention services, including universal, high-quality preschool education, even though thousands of youngsters remain – and will remain – at risk of a disability from lead exposure, a disabling condition explicitly recognized under IDEA. 34 C.F.R. § 300.8(c)(9)(i); 20 U.S.C. §1401(3)(A)(ii) ; Compl. at ¶¶ 276-83, 285, 334, 362-63.

### 2.    Defendants Have Systemically Failed to Provide a Free Appropriate Public Education in the Least Restrictive Environment.

Federal law requires that children with qualifying disabilities receive a FAPE. 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 300.101(a). The IDEA mandates that Defendants design and develop an individualized education program ("IEP") for each qualifying child in a school district. 20 U.S.C. § 1412(a)(4), §1414(d); 34 C.F.R. § 300.112, §§ 300.320-24. IEPs must contain specific information to ensure that they are designed to confer a meaningful educational benefit, including

measurable annual goals, a statement of the special education services that will be provided to the student, and a statement of any individual accommodations necessary to measure academic achievement. 20 U.S.C. § 1414(d)(3). To the maximum extent possible, the IDEA requires that children with disabilities be educated in settings with their non-disabled peers. 20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.114(a)(2).

As illustrated by the experiences of the named Plaintiffs, Defendants FCS and GISD are systematically failing to provide special education and related services compliant with students' IEPs in the least restrictive environment. Plaintiffs also allege MDE is failing to provide FCS and GISD with the expertise and resources necessary to deliver FAPE in the least restrictive environment. Compl. at ¶¶ 94-102, 110, 113-14, 123-26, 144-47, 150, 154, 158-64, 180-84,194-95, 199, 208, 217, 238, 242-43, 255, 258-63, 265, 272-74, 278-81, 290, 293, 297, 299, 320, 339, 341, 345, 370-71. These failures are demonstrated by Plaintiffs' allegation that the percentage of students with IEPs in Flint who spend less than 40% of their day in a regular education classroom is nearly double Michigan's statewide average. Compl. at ¶ 78.

### 3. Defendants Have Systemically Failed to Provide Students with Procedural Safeguards in the Disciplinary Process.

The IDEA contains procedural safeguards to ensure that children with disabilities are not removed from the learning environment on account of their

disabilities. For example, after ten cumulative days of suspensions or expulsions, a manifestation determination review ("MDR") must be conducted to determine whether the student's behavior is related to his or her disability. 20 U.S.C. §1415(k)(1)(E). If the behavior is a manifestation of his or her disability, that child must remain at school and must be provided with the behavioral services necessary to support and reinforce positive behavior. 20 U.S.C §1415(k)(1)(E)-(F).

As illustrated by the experiences of the named Plaintiffs, Defendants FCS and GISD have engaged in a pattern and practice of failing to provide students with disabilities the procedural safeguards mandated by the IDEA in the disciplinary process and of using unduly harsh disciplinary measures on students with disabilities, including employing physical restraints and seclusion techniques. Compl. at ¶¶ 108-110, 140-42, 148, 251-52, 301-03, 319-20. Defendant MDE has also failed in its oversight role by not providing FCS and GISD with the resources and expertise needed to ensure compliance with IDEA's procedural safeguards. Compl. at ¶¶ 4, 16, 365, 381. As Plaintiffs allege, these systemic failures have resulted in alarmingly high suspension and expulsion rates in Flint. In 2014-15, 13.59% of special education students in FCS were suspended or expelled for more than ten days – over *five times* the statewide average of 2.48%. Compl. at ¶ 80.

### 4. Defendants Are Discriminating and Denying Access to Educational Services on the Basis of Disability.

Under the IDEA, Defendant MDE must ensure that Defendants FCS and

GISD take steps to guarantee that children with disabilities have available to them the same variety of educational programs and services that are available to nondisabled children, including art, music, industrial arts, consumer and homemaking education, and vocational education. 20 U.S.C. § 1412(a)(2), § 1413(a)(1); 34 C.F.R. § 300.110. Additionally, under Section 504 of the Rehabilitation Act and Title II of the ADA, Defendants cannot deny to disabled students access to essential services and programming available to nondisabled students solely on account of their disabilities. 29 U.S.C. § 794 *et seq.*; 34 C.F.R. § 104.31-.39; 42 U.S.C. § 12101 *et seq.*

As the experiences of named Plaintiffs show, Defendants are systematically failing to ensure that children with disabilities have access to the same range and quality of programs provided to nondisabled children. Compl. at ¶¶ 108, 110, 112, 123, 125-26, 184, 209, 259, 261, 301, 384, 387, 391. As Plaintiffs' allegations demonstrate, many children with disabilities are repeatedly and unnecessarily segregated and secluded from the general education environment. Compl. at ¶¶ 108-10, 144, 148-49, 151, 177, 184, 209, 243, 273, 290, 301-02. Children with disabilities are also sent home and/or suspended without proper documentation, resulting in a vast underreporting of discriminatory exclusions, Compl. at ¶¶ 110, 143, 254, and Defendants routinely fail to provide take-home resources that would allow suspended or expelled children to make academic progress. Compl. at ¶¶

110; 255; 294.

## ARGUMENT

**I.    Exhaustion Is Not Required Because It Would Be Futile to Exhaust Administrative Remedies.**

Defendants MDE, FCS, and GISD all argue that the Complaint should be dismissed because Plaintiffs have failed to exhaust their administrative remedies. But exhaustion is not a blanket requirement for all claims brought under the IDEA. As Defendants concede in their briefs, exhaustion is not required when administrative remedies are futile. MDE Br. at 23; FCS Br. at 23; GISD Br. at 21. Plaintiffs have clearly established futility in this case because Defendants systematic violations of IDEA, as alleged in the Complaint, cannot be remedied through the administrative process. Exhaustion is also not required because an emergency situation exists. Treating the factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor as is required at the pleadings stage, Plaintiffs' Complaint states plausible claims of systemic violations and emergency circumstances such that exhaustion is not required.

**A.    Exhaustion Is Not Required Because Plaintiffs Allege Systemic Violations that Cannot be Remedied through the Administrative Process.**

The futility exception applies when the administrative process that is currently available is inadequate or insufficient to protect the plaintiffs' rights. *See F.H. v. Memphis City Schs.*, 764 F.3d 638, 644 (6th Cir. 2014) ("[e]xhaustion is

13

not required if it would be futile or inadequate to protect the plaintiff's rights") (quoting *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000)). Similarly, exhaustion is not a prerequisite when plaintiffs seek relief that is not otherwise available through the administrative process. *See Dixon v. Hamilton City Sch.*, 1999 U.S. Dist. LEXIS 21388 at *17 (S.D. Ohio Nov. 4, 1999) (Ex.3) (exhaustion is not required when "the relief that Plaintiffs seek . . . is not available through the administrative process."). Such is the case here because the gravamen of Plaintiffs' Complaint is to allege and seek relief from *systemic* failures, none of which has an adequate remedy through routine administrative procedures.

It is well established that when plaintiffs allege systemic violations requiring system-wide remedies, the administrative process cannot provide adequate relief and exhaustion is, therefore, futile. For example in *J.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004), the leading case on the futility of exhaustion when system-wide relief is necessary, the plaintiffs alleged systemic violations under the IDEA. These violations included failures by the school district to prepare and implement IEPs; to provide appropriate training to staff; to perform timely evaluations and reevaluations; to provide parents with procedural safeguards related to identification and evaluation of children with disabilities; and to perform legally required responsibilities in a timely matter. *Id.* at 115. After a survey of other precedents, the court held that "[t]he common element . . . is that the

14

plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process." *Id.* at 114. And the court distinguished the systemic reform case before it from a "textbook" IDEA lawsuit involving an individual child whose parents were dissatisfied with the content of the IEP developed for her. *Id*. at 114-15.  Because the plaintiffs' complaint fell well outside the "textbook" category and sought systemic remedies not available through the administrative process, the court held that exhaustion was not required. *Id*. at 115. In holding that exhaustion was futile, the court also recognized the lower pleading standard on a motion to dismiss. *Id.*

Similarly, the systemic violations exception to exhaustion was recently recognized by district court decisions in this circuit.  In *W.H. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 7206 at *19  and *N.S. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 91589 at *34, plaintiffs defeated motions to dismiss because they alleged systemic violations that rendered exhaustion futile. In *W.H.*, the plaintiffs alleged that the school district and SEA systematically denied LRE placements and placed students in inappropriate segregated settings. *W.H.*, 2016 U.S. Dist. LEXIS 7206 at *4. In *N.S.*, the plaintiffs alleged that a lack of training, a failure to collect data, and a failure to implement alternative policies and strategies contributed to

the use and overuse of isolation and restraint practices by defendants. *N.S.*, 2016 U.S. Dist. LEXIS 91589 at *30. The district courts, concurring with the Second Circuit's reasoning in *J.S.*, held that exhaustion would be futile because, first, the plaintiffs "are challenging practices that occur across the school district and the state at a meta-level," *W.H.*, 2016 U.S. Dist. LEXIS 7206 at *16-17, and, second, because plaintiffs alleged "specific incidents that should have made the defendants aware of a problem. . .  [including] a disproportionate number of incidents of isolation and restraint in [the district] as compared to other school districts" and "evidence that the problem is widespread," among other violations, *N.S.*, 2016 U.S. Dist. LEXIS 91589 at *34. Finally, the court rejected the defendants' characterization of the complaints as seeking only individualized relief pertaining to each plaintiff's IEP, citing the plaintiffs' request for injunctive relief encompassing systemic reforms to the school district's overarching policies and practices. *W.H.*, 2016 U.S. Dist. LEXIS 7206 at *19-20, 29-31.

Plaintiffs' Complaint in this case fits squarely within the systemic violations exception to exhaustion; this case is materially indistinguishable from *J.S.*, *W.H.*, and *N.S.*  As is clear from the Complaint, Plaintiffs' primary challenge is not to the individual instances in which their rights were violated but rather to the numerous systemic failures of Defendants to comply with federal and state law. Compl. at ¶¶ 349-384.

Plaintiffs' Complaint alleges four systemic violations which can only be remedied through system-wide relief, remedies unavailable through the administrative process. First, Defendants have failed to develop and implement sufficient child find procedures. Compl. at ¶¶ 349-365. Second, Defendants fail to provide FAPE in the least restrictive environment. Compl. at ¶¶ 366-371. Third, Defendants fail to provide students with procedural safeguards in the disciplinary process. Compl. at ¶¶ 372-381. Lastly, Defendants have discriminated against students with disabilities by depriving them of access to educational services provided to their non-disabled peers. Compl. at ¶¶ 382-384. Administrative review of individual claims is simply inadequate to address these violations. As Plaintiffs allege, significant, system-wide reforms of Defendants policies and practices are required.

As to the first systemic violation, MDE, GISD, and FCS are each responsible for identifying, locating, and evaluating students with disabilities who require special education services. 20 U.S.C. §1412(a)(3)(A); 20 U.S.C. § 1414(a)(1)(A); 20 U.S.C. 1401(3); 34 C.F.R. § 300.111(a)(1)(i); 34 C.F.R. §300.301(a). *See also* Factual Background, *supra* at 4.Plaintiffs allege Defendants are engaged in the systemic practice of not screening and evaluating students as required by child find and that this practice is even more egregious given the hundreds, if not thousands of lead poisoned children in Flint, a risk factor

delineated under IDEA. Despite both the debilitating lead crisis and the high percentage of students who have already been classified as having a qualifying disability, Plaintiffs allege that there remains a chronic under-evaluation of students to determine if additional educational supports are required, and Defendants have not implemented appropriate educational screening since knowledge of the Flint water crisis became known in 2015. Administrative exhaustion by individual students will not remedy this systemic failure. Indeed, the need for city-wide enhanced screenings points to the inefficacy of individualized administrative review and demonstrates that exhaustion would be futile. Plaintiffs seek enhanced screening for *all* children within FCS to screen for the adverse impact of elevated blood lead levels and to determine whether or not a child is eligible for special education services. Compl. at ¶ 395 D, E. Exhaustion would require parents and guardians to initiate, on an individualized basis, administrative proceedings to challenge the lack of, or inappropriate, screening and evaluation. *See* 20 U.S.C. § 1415(b)(6).[1] Plaintiffs allege that this individualized process is inadequate for Flint students, given that the entire population was exposed to

---

[1] 34 C.F.R. §300.304(c)(4) requires the public agency to ensure that the child is assessed in *all* areas related to the suspected disability. This could include, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities. This is not an exhaustive list of areas that must be assessed. Decisions regarding the areas to be assessed are determined by the suspected needs of the child. If a child's behavior or physical status is of concern, evaluations addressing these areas must be conducted.

elevated lead levels and put at risk of a disability.[2]   Thus, the relief Plaintiffs seek

cannot be afforded through the individualized administrative process.

In addition, Plaintiffs allege that the State of Michigan's school funding

structure creates perverse incentives to minimize the number of children identified,

located, and evaluated for special education. Compl. at ¶¶ 87-88.  This funding

structure forces FCS to divert general funds to special education through a process

identified by the MDE as cross-subsidization.   Defendants are under severe

budgetary constraints that necessitate systemically referring fewer students for

special educational screenings and evaluations in order to preserve funding for the

general education program. *Id*. In *W.H. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist.

LEXIS 7206 at *19 (M.D. Tenn. 2016),   plaintiffs challenged, among other

violations, the funding apparatus surrounding special education, in which improper

financial incentives resulted in the plaintiffs being placed in more restrictive

environments. The court held that exhaustion would be futile because "the state is

a defendant in this action and has an interest in upholding, rather than changing, its

current practices" and that "[t]he plaintiffs are challenging practices that occur

---

[2] In considering the burdens of the administrative process, it is also appropriate to take into consideration the fact that Flint students are overwhelmingly from impoverished households. *See e.g.*, *M.G. v. N.Y. City Dep't of Educ.*, 162 F. Supp. 3d 216, 242 (S.D.N.Y. 2016) ("Such review processes are inefficient, burdensome, and available only to those families with the resources to pursue them.") (certifying certain classes of plaintiffs seeking relief under the IDEA and Section 504).

across the school district and the state at a meta-level, practices that are removed from the local-level evaluation of students' abilities and determinations of services needed." *Id.* at 15, 16-17.  The same is true here.

Defendants' second systemic violation is their pattern and practice of failing to provide a free appropriate public education in the least restrictive environment. Plaintiffs detail specific facts supporting this systemic violation. *See e.g.*, Compl. at ¶ 77 ("These 907 students with special needs are not being provided with special education and related services in compliance with their IEPs in the least restrictive environment."); Compl. at ¶ 78 ("The percentage of students in FCS schools with an IEP . . . who receive their education in a regular education classroom for less than 40% of the day has been nearly double the statewide percentage . . .").  These facts demonstrate that Defendants' current policies and practices result in a denial of Plaintiffs' right to FAPE and LRE not just in isolated instances, but on a systemic basis across the district.   Relief for this violation must likewise be systemic by reforming Defendants' policies and practices, along with ensuring sufficient resources and support at the school and classroom levels.[3]

Similarly, Plaintiffs have alleged the third systemic violation of a pattern and

---

[3] FCS suggests that Plaintiffs' allegations of Defendants' failure to provide early interventions including universal preschool is a matter solely within the purview of the Michigan Legislature.  FCS Br. at 29-30.  However, as alleged in Plaintiffs' Complaint, the provision of early interventions including universal preschool is an essential remedy to fulfill Defendants' obligations regarding child find and the provision of FAPE.  Compl. at ¶ 51.

practice of failing to provide the procedural safeguards prescribed by IDEA in the student disciplinary process. Compl. at ¶ 53, 373-74. To guard against students being removed from the learning environment solely because of their disabilities, the IDEA mandates various procedural safeguards for students with disabilities who are subject to disciplinary removals. 34 CFR §§300.530 - 300.536. Plaintiffs' experiences illustrate Defendants' systemic failure to avoid discriminatory discipline and provide procedural safeguards. *See e.g.*, Compl. at ¶ 109 ("D.R. was suspended or sent home from school more than 30 times during the 2015-2016 school year … His exclusions and suspensions [are] vastly underreported."); Compl. at ¶ 140 ("C.D.M was handcuffed for nearly an hour by a Flint Police Department school resource officer."); Compl. at ¶ 177 ("J.T. was suspended on March 29, 2016, the day after he received his IEP."); Compl. at ¶ 249 ("C.D. was once suspended for 10 days because he hit a student in self-defense after the student physically attacked him."); Compl. at ¶ 292 ("Instead of referring [O.N.] for an evaluation … [his teacher] instructed the school to place him in a first grade classroom with a teacher who had a reputation for being a strict disciplinarian."). These practices can only be remedied through the imposition of the systemic relief sought by Plaintiffs including clear and compliant policies for suspension and expulsion; consistent provision of manifestation determination reviews; training and supports for teacher and staff; comprehensive data collection; and

implementation of a system of positive behavioral supports.

Finally, Plaintiffs allege a fourth systemic violation: discrimination against students with disabilities by denying them access to the educational services provided to their non-disabled peers. Such discrimination is prohibited under IDEA, Section 504, and the ADA. 20 U.S.C. § 1412(a)(2), § 1413(a)(1); 34 C.F.R. § 300.110; 29 U.S.C. § 794(a); 42 U.S.C. § 12132. Again, the allegations in Plaintiffs' Complaint illustrate Defendants' systemic failure to comply with these requirements. *See* Compl. at ¶ 108 (Plaintiff D.R. secluded from the general education environment); Compl. at ¶¶ 143, 150 (Plaintiff C.D.M. subjected to regular exclusions from his educational placement and placed in full-time classroom for students with Emotional Impairments with no consultation of his parent.); Compl. at ¶ 192 (Plaintiff N.S. denied entry to her appropriate grade level without providing appropriate documentation to her parent and without offering an evaluation to make education with same-age peers possible); Compl. at ¶ 215 (Plaintiff J.W. experienced bullying with no intervention by his teachers, who in fact engaged in targeted bullying tactics themselves);  Compl. at ¶ 243 (Plaintiff C.D. was placed in a self-contained classroom for the cognitively impaired despite this being inappropriate for his Speech and Language Impairment); Compl. at ¶¶ 249, 250 (Plaintiff C.D. has been unfairly disciplined, even when students who have attacked him are not disciplined); Compl. at  ¶¶ 272, 301 (Plaintiffs D.K. and

O.N. have been excluded from field trips due to behavioral manifestations of disability). These detailed allegations, when viewed as a whole, sufficiently demonstrate at the pleadings stage a systemic pattern of failing to provide students with disabilities the same educational opportunities and benefits made available to their non-disabled peers. This systemic failure to comply with the most fundamental mandates in federal law – the requirement of equal educational access and opportunity for students with disabilities – can only be remedied through an overhaul of Defendants' policies and practices to ensure this discrimination is rooted out in all of the facets Flint's educational program.

Finally, Defendant MDE claims that Plaintiffs' claim of systemic violations in FCS must be dismissed because they do not specifically allege similar oversight failures by MDE in each of the other fifty-five school districts in Michigan. *See* MDE Brief at 30 – 31. MDE cites no legal support for this bizarre argument, and there is none. The rationale behind the systemic violations doctrine is that systemic relief is not an administrative remedy, so pursuing such would be futile. This is no less true for a state-level defendant than it is for the school district, even if the systemic relief sought is not statewide. Thus, systemic failures in one school district are sufficient to excuse exhaustion when exhaustion would be futile. *See e.g.*, *M.A. v. State Operated Sch. Dist. of Newark*, 344 F.3d 335, 343 (3d Cir. 2003) (exhaustion not required where allegations of "a widespread systemic breakdown

of the provision of free, appropriate public education . . . could not be addressed sufficiently in administrative proceedings."); *Jose P. v. Ambach*, 669 F.2d 865, 869-70 (2d Cir. 1982) (exhaustion futile where individualized administrative remedies "could well be found inappropriate" to resolve "complex and polycentric" systemic placement issues "more appropriate for resolution by a master, taking a structural approach[.]"); *New Mexico Ass'n for Retarded Citizens v. N.M.*, 678 F.2d 847, 851 (10th Cir. 1982) (exhaustion excused where Plaintiffs alleged "that the entire special education service system offered by the State is infirm"); *A.A. v. Bd. of Educ.*, 196 F. Supp. 2d 259, 263 (E.D.N.Y. 2002) (IDEA exhaustion futile where Plaintiffs alleged systemic failure within a school district); *Hendricks v. Gilhool*, 709 F. Supp. 1362, 1367 (E.D. Pa. 1989) (IDEA exhaustion futile under "systemic violation" exception).

### B.    Exhaustion Is Not Required Because an Emergency Situation Exists.

In addition to futility, courts have recognized an exception to exhaustion when an emergency situation arises such that the plaintiff will suffer severe and irreparable harm if exhaustion is not excused. *See Coleman v. Newburgh*, 503 F.3d. 198; *Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir. 2000); *Komninos v. Upper Saddle River Bd. Of Educ.*, 13 F.3d 775 (3d Cir. 1994); *T.H. v. Cincinnati Pub. Sch. Dist. Bd. Of Ed*, 2014 U.S. Dist. LEXIS 87698 (S.D. Ohio June 27, 2014) (Ex.4).  This exception applies here because the Flint water crisis is an ongoing emergency

which is certain to cause Plaintiffs severe and irreparable harm if they are not able to seek relief now.

The emergency exception to exhaustion finds its roots in the legislative history of the IDEA.  *See Coleman*, 509 F.3d at 206. A House Report states that the futility exception to exhaustion includes complaints that "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)." *See* H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985).  For the emergency exception to apply, it must be demonstrated that a child "will suffer serious and irreversible mental or physical damage." *See Komninos*, 13 F.3d at 779.

Here, Plaintiffs' allegations regarding the Flint water satisfies these requirements.   As fully detailed in the Complaint, scientific research confirms that lead is a potent neurotoxin, childhood lead poisoning has a negative impact on developmental and biological processes, and no level of lead exposure is safe or free from deleterious and irreversible health outcomes. Compl. at ¶¶ 62-63. By exposing children to lead-contaminated water, and failing to immediately identify those with disabilities and provide them with special education interventions, Defendants have created a situation that will lead to long lasting, irreversible negative consequences. Compl. at ¶ 70 ("Documented risks of learning, behavioral, and cognitive problems are present for all potentially exposed children in Flint.");

Compl. at ¶ 72 (quoting FCS Superintendent Bilal Tawwab "the effects of lead poisoning on our children cannot be fully reversed . . .   [t]he Flint Community Schools will need additional support in the form of expanded special education services."); MDE Br. at 2 (acknowledging that there will be Flint schoolchildren "who end up needing special services as a direct result of the Flint water crisis").

As the Complaint states, "[l]ead, without an aggressive, comprehensive and proactive response" will significantly reduce the prospects of Flint children for success in school, a fundamental building block for a healthy and productive life. Compl. at ¶ 5; *see also* Compl. at ¶ 8 ("It is impossible to overstate the resounding effects of the failure to provide meaningful education opportunities, *and to provide them now*.")(emphasis added). Defendants' ongoing failure to provide early interventions and special education programs and supports to Flint children in the wake of the water crisis fits squarely with the emergency exception.

## II.   Plaintiffs Have Standing to Sue for Violations of IDEA, Section 504 and the ADA.

MDE asserts that Plaintiffs lack standing to challenge MDE's violations of its obligations under IDEA, Section 504, and the ADA.   MDE's contention fundamentally mischaracterizes the role and responsibilities of the state education agency ("SEA") in effectuating the rights of students with both diagnosed, and as yet undetected, disabilities.   Contrary to MDE's assertions, the SEA is not a powerless bystander to the illegal actions of the local education agency ("LEA"),

but rather has specific and direct responsibility under federal law for ensuring the provision of special education services in the State of Michigan and compliance of each LEA with special education and anti-discrimination laws. Because MDE's failure to fulfill this essential role violates Plaintiffs' rights under the IDEA, Section 504 and the ADA, Plaintiffs have standing to bring their Complaint.

It is well established that there are three elements of standing required pursuant to Article III of the U.S. Constitution: injury-in-fact, causation and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In determining whether Plaintiffs have met these standing elements, the court "'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975)). As explained below, each element of standing is satisfied in the Complaint before this Court: Plaintiffs plainly allege injury under federal special education and anti-discrimination statutes; these injuries are fairly traceable to the MDE; and the injuries are capable of redress through judicial relief.

### A.   Plaintiffs Allege Injury-in-Fact from the MDE's Failure to Fulfill its Obligations Under the IDEA, Section 504 and the ADA.

To establish injury-in-fact, a plaintiff must allege an "invasion of a legally protected interest." *Defs.s of Wildlife*, 504 U.S. at 560. The "injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of

which creates standing." *Warth*, 422 U.S. at 500 (internal quotation marks omitted). Plaintiffs' Complaint alleges systemic violations of the rights of Flint students under federal statutes, namely the IDEA, Section 504 and the ADA.

### 1. SEAs are obligated to ensure the provision of special education in compliance with IDEA, Section 504 and the ADA.

The State of Michigan, through its education agency – the MDE – has the essential responsibility for ensuring that special education is provided to all students within its jurisdiction who require such services in conformance with the mandates of federal law. Under IDEA, the SEA is:

> responsible for ensuring that . . . all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency-- (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and (II) meet the educational standards of the State educational agency.

20 U.S.C. § 1412(a)(11)(A). Additionally, the State must "ensure that any State rules, regulations, and policies relating to this chapter conform to the purposes of" the IDEA. 20 U.S.C. § 1407(a)(1).

The IDEA also enumerates the specific responsibilities of the SEA in ensuring appropriate identification, evaluation, and provision of services and due process safeguards to students with disabilities. To qualify for federal assistance, the State must "ha[ve] in effect policies and procedures to ensure that the State meets" conditions including:

- "A free appropriate public education is available to all children with disabilities residing in the State . . . including children with disabilities who have been suspended or expelled from school."

- "All children with disabilities residing in the State . . . who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services."

- "An individualized education program, or an individualized family service plan [for infants or toddlers] . . . is developed, reviewed, and revised for each child with a disability."

- **"To the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled," i.e., in the least restrictive environment.

- **"Children with disabilities and their parents are afforded the procedural safeguards required by section 1415" of IDEA, which includes safeguards pertaining to discipline.

20 U.S.C. §§ 1412(a)(1)(A), (3)(A), (4), (5)(A), (6)(A).[4]   In turn, the IDEA

provides that an LEA is eligible for financial assistance only if it "provides

assurances" to the SEA that "in providing for the education of children with

disabilities within its jurisdiction, [the LEA] has in effect policies, procedures, and

programs that are consistent with the State policies and procedures established

under section 1412."  20 U.S.C. 1413(a)(1).  Additionally, the IDEA provides for

---

[4] Additionally, the "State must ensure that each public agency takes steps to ensure that its children with disabilities have available to them the variety of educational programs and services available to nondisabled children in the area served by the agency, including art, music, industrial arts, consumer and homemaking education, and vocational education." 34 C.F.R. § 300.110; *see also* 20 U.S.C. § 1412(a)(2), § 1413(a)(1).

"[d]irect services by the State educational agency," stating that the SEA "shall use the payments that would otherwise have been available to a local educational agency or to a State agency to provide special education and related services directly to children with disabilities" if that LEA or State agency is unable or unwilling to do so.  20 U.S.C. § 1413(g)(1).

Furthermore, the IDEA obligates SEAs to monitor compliance with IDEA and to act when LEAs fail to meet their obligations under the statute and its regulations.  Where an LEA engages in illegal conduct and practices, SEAs are not mere passive observers, but rather obligated to implement specified monitoring protocols and utilize specific enforcement tools.  Under IDEA's implementing regulations, the State must "[m]onitor the implementation" of the regulatory mandates and "[m]ake determinations annually about the performance of each LEA."  34 C.F.R. § 300.600(a)(1)-(2).  In completing its monitoring duties, the State must use "quantifiable indicators" as well as "such qualitative indicators as are needed to adequately measure performance" in "priority areas" including the provision of FAPE in the least restrictive environment and state exercise of supervision of various IDEA requirements.  34 C.F.R. § 300.600(d).  The State is also obligated to "[r]eport annually on the performance of the State and of each LEA."  *Id.* § 300.600(a)(4).

IDEA provides concrete tools that the SEA must use to ensure LEA

compliance and proper functioning of the State's special education system.  These include the withholding of funds to noncompliant LEAs and provision of support in the form of improvement plans and technical assistance.  34 C.F.R. § 300.600(a)(3) (State is required to enforce IDEA's mandates "*using appropriate enforcement mechanisms, which must include*, if applicable, the enforcement mechanisms identified in § 300.604(a)(1) (technical assistance), (a)(3) (conditions on funding of an LEA), (b)(2)(i) (a corrective action plan or improvement plan), (b)(2)(v) (withholding funds, in whole or in part, by the SEA), and (c)(2) (withholding funds, in whole or in part, by the SEA)" (emphasis added)).  The SEA also "examines data . . . to determine if significant discrepancies are occurring in the rate of long-term suspensions and expulsions of children with disabilities" among LEAs or compared to nondisabled students within LEAs; if such discrepancies are found, the SEA must act by "review[ing] and, if appropriate, revis[ing] (or requir[ing] the affected [SEA or LEA] to revise) its policies, procedures, and practices relating to the development and implementation of IEPs, the use of positive behavioral interventions and supports, and procedural safeguards."  20 U.S.C. §1412(a)(22).

Section 504 and the ADA also place obligations directly on SEAs.  Each of these statutes prohibits SEAs and LEAs from discriminating against individuals with disabilities, meaning students with disabilities cannot be excluded from

participating in or receiving the benefits of a school's services, programs, or activities.   Section 504 and the ADA require provision of reasonable accommodations and modifications designed to provide meaningful access to educational benefits, or as necessary to avoid discrimination based on disability. 34 C.F.R. § 104.12; 34 C.F.R. § 104.44; 28 C.F.R. § 35.130(b)(7).

Both LEAs and SEAs are subject to Section 504 and Title II of the ADA. Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."   29 U.S.C. § 794(a).   According to the statute, the operations of the MDE qualify as a "program or activity" covered by Section 504. 29 U.S.C. § 794(b).  Similarly, Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   MDE is a "public entity" under Title II and thus subject to its mandates. 42 U.S.C. § 12131(1).

> **2.    Plaintiffs allege concrete and substantive injuries from MDE's failure to fulfill its enumerated duties under IDEA, Section 504 and the ADA**

The MDE asserts that Plaintiffs' allegations against MDE "are insufficient to establish standing because they are purely procedural in nature" and too generalized to warrant judicial interference.  MDE Br. at 33-34.  A plain reading of the Complaint, however, demonstrates that Plaintiffs allege numerous specific violations of IDEA, Section 504, and the ADA, and detail the substantive injuries-in-fact resulting from such violations.  These allegations are more than sufficient to satisfy the standing requirement on a motion to dismiss.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Defs.s of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)).  This Court should reject MDE's attempt to mischaracterize its own responsibilities under these laws and, correspondingly, the agency's attempt to evade judicial review of its failures to meet those responsibilities to Plaintiffs in the Flint public schools.

### a.    Injuries under IDEA

Plaintiffs' Complaint sets forth, in detail, MDE's specific violations resulting in injuries to Plaintiffs under the IDEA.  The Complaint explicitly identifies the specific areas in which MDE's failures result in violations of the core mandates of IDEA:

MDE, the State agency charged with conducting oversight and ensuring FCS's and GISD's compliance with IDEA in the provision of special education services, has engaged in an ongoing pattern and practice of systemically failing to provide FCS and GISD with sufficient funding and support to enable FCS and GISD to provide: early screening and intervention services for children aged 3-4; evaluations for all children at risk of a disability in fulfillment of the child find mandate; special education services compliant with students' individualized education programs in the least restrictive environment; and procedural safeguards to prevent the use of unduly harsh disciplinary measures for disability-related behaviors, as required by IDEA.

Compl. at ¶ 16.   The Complaint also lists, as an issue common to the class, "[w]hether Defendants MDE and GISD additionally violated Plaintiffs' rights under the IDEA, Section 504, and Title II" by "failing appropriately to monitor and enforce Defendant FCS's timely identification of, evaluation of, and provision of, legally mandated special education and related services to, children with known or suspected disabilities who require or may require such services."  Compl. at ¶ 41.

MDE's assertion that Plaintiffs "fail to specify" the discrete deficiencies in MDE's monitoring and oversight actions mischaracterizes Plaintiffs' burden to allege injury-in-fact.  MDE Br. at 34.  Plaintiffs have clearly met that burden by detailing the injuries to their protected interests under IDEA.  Plaintiffs further allege that MDE is obligated to "ensure that all LEAs in Michigan, including Defendants FCS and GISD, implement and comply with the   . . . specific provisions of the IDEA," to prevent and ameliorate such injuries.  Compl. at ¶  50; *see also* Compl. at ¶¶ 51-54 (detailed summary of requirements in the areas of

child find, evaluation, design and implementation of IEPs, and disciplinary procedures for students with disabilities).  As explained below, Plaintiffs have demonstrated that these injuries are fairly traceable to MDE's failure to perform its prescribed statutory duties.  To satisfy injury-in-fact, Plaintiffs are not obligated on a motion to dismiss for lack of standing to delineate a full and complete compendium of the agency's failures, as the MDE suggests.

MDE further contends that its oversight and monitoring failures are mere "procedural" violations not actionable under IDEA.[5]  This contention rests upon a gross misreading of the case law precedent distinguishing substantive and procedural violations under the statute and ignores the grave consequences of MDE's failure to ensure provision of crucial special education services to Flint students.

First, MDE readily concedes, citing *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010), that a procedural violation of IDEA is actionable "if it results in a loss of educational opportunity . . . or causes a deprivation of educational benefits." (Citations omitted). MDE Br. at 32-33. It is also clear that

---

[5] The MDE asserts that Plaintiffs recognize it is the responsibility of the MDE to provide oversight to school districts, as separate and distinct from the FCS's responsibility to provide special education programs and services as an LEA.  Plaintiffs do not concede that MDE's role is limited to LEA oversight, as demonstrated by the detailed contentions of MDE's violation of its numerous responsibilities under IDEA and other statutes.  Furthermore, the plain text of IDEA makes clear that MDE's responsibilities are much broader than as characterized by the agency in its motion.

plaintiffs can establish standing if they "suffer a concrete injury as a result of the disregarded procedural requirement." *Parsons*, 801 F.3d at 712 (citation omitted). Plaintiffs' Complaint contains specific allegations that MDE's failure to ensure Plaintiffs' LEAs identify, evaluate and provide services to students with disabilities, and avoid misuse of disciplinary policies excluding students from school, has resulted in a substantive loss of educational opportunity and severe deprivation of educational benefits to Flint students attending FCS and GISD schools. Moreover, as the court in *D.S.* explicitly held, "[t]he Supreme Court has made clear that the IDEA's 'procedural safeguards cannot be gainsaid,' as 'Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, as it did upon the measurement of the resulting IEP against a substantive standard.'" *D.S.*, 602 F.3d at 565 (quoting *Bd. of Educ. v. Rowley,* 458 U.S. 176, 205–06 (1982)). Thus, even accepting MDE's argument that its violations should be viewed as procedural, those violations are, without question, actionable under IDEA.

Second, MDE's violations, as set forth in the Complaint, are not only procedural. MDE has ultimate responsibility for ensuring that all aspects of the rights of Flint students to special education are fully protected and properly effectuated in conformance with IDEA's requirements. *See e.g., Ullmo v. Gilmour*

*Acad.*, 273 F.3d 671, 679 (6th Cir. 2001) (pursuant to 20 U.S.C. § 1412(a)(11), SEA is "the primary authority for establishing a state's compliance with the IDEA"). As in *D.S.*, Plaintiffs have standing to enforce procedural violations of IDEA when LEAs fail to adhere to prescribed timelines in responding to parent requests for evaluations, the preparation and completion of IEPs, and similar violations. *See e.g., D.S.*, 602 F.3d at 565 (noting LEAs "fail[ure] to make timely responses… present[s] a procedural question"). Beyond those essential procedural requirements, the SEA also has oversight responsibilities to ensure effectuation of IDEA's substantive provisions. *See Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) (SEA "may be responsible for violations of the IDEA when the state agency in some way fail[s] to comply with its duty to assure that the IDEA's substantive requirements are implemented," including "systemic violation" of the state's IDEA responsibilities) (internal quotation marks omitted).[6] Plaintiffs' Complaint contains detailed contentions of substantive violations of their rights under IDEA, including the failure under child find to locate and evaluate students with disabilities, Compl. at ¶¶ 41, 350, 353, 365; failure to provide FAPE in the least restrictive environment, Compl. at ¶¶371, 388; and use of inappropriate disciplinary measures, Compl. at ¶ 381. The fact that the IDEA provides detailed

---

[6] MDE also reasserts that Plaintiffs lack standing because they failed to exhaust the IDEA's administrative process As Plaintiffs explain, *see* Section I *supra* at 13, this assertion lacks merit.

protocols that SEAs must follow in fulfilling their monitoring and enforcement duties, in no way renders the SEA's role as simply procedural and beyond judicial review.

Indeed, the Sixth Circuit has explicitly recognized that "[u]nder the IDEA, the responsibility for ensuring that disabled students receive a free appropriate public education lies with the state educational agency." *Ullmo*, 273 F.3d at 679. Courts across the country have likewise recognized that the SEA is ultimately responsible for ensuring its LEAs provide special education programs and services in full compliance with IDEA's provisions. *See e.g., Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1269 (10th Cir. 2007) ("Responsibility for implementing the IDEA and policing IDEA compliance rests with the states, subject to the IDEA's limited but specific structural framework. Each . . . ("SEA") must enact procedures and policies to implement the IDEA, and ensure both state and local compliance with the Act." (internal citations omitted)); *M.A. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 340 (3d Cir. 2003) ("[T]he participating state retains primary responsibility for ensuring compliance with the IDEA and for administering educational programs for disabled children.").

### b.    Injuries under Section 504 and ADA

In addition to the allegations summarized above, Plaintiffs allege that Defendants have "discriminated against Plaintiffs and similarly situated children

by denying them access to essential services and programming that is available to non-disabled students solely on account of their disabilities," in violation of Section 504 and the ADA. Compl. at ¶¶ 386, 390. Furthermore, Plaintiffs contend that Defendants have "failed to provide Plaintiffs and similarly situated children with a FAPE and/or reasonable accommodations due to their disability-related behaviors," in violation of their mandated duties under Section 504. Compl. at ¶ 387. Contrary to MDE's assertions, the Complaint proffers detailed contentions about the various ways in which Plaintiff students have been excluded from educational opportunities through lack of appropriate educational services and accommodations, and inappropriate school discipline, injuries cognizable under Section 504 and the ADA.

The MDE asserts that Plaintiffs do not properly allege actionable injuries under their Section 504 and ADA claims because it is unknown whether plaintiffs have a disability or are eligible for special education, making their injury too hypothetical or generalized for judicial intervention. First, MDE's argument ignores the fact that the Plaintiffs – and their proposed class – include children who "currently have" disabilities. Complaint ¶ 10; *see also* Complaint ¶ 14 ("Of the 5,426 students attending FCS schools, 907, or 16.7%,15 are classified with qualifying disabilities and are consequently eligible for special education and related services."). MDE does not challenge Plaintiffs' allegations of injury to

39

FCS and GISD students with identified disabilities under Section 504 and the ADA.

Second, MDE attempts to use its own failure to ensure adequate identification and evaluation of students with suspected disabilities to insulate it from review of its violations under Section 504 and the ADA. The Complaint is replete with detailed factual contentions concerning children who are at risk of disability, may qualify for special education services, and will need accommodations, including all children in Flint who have been exposed to elevated levels of lead over an extended timeframe from the contaminated water supply. Section 504 and the ADA require provision of reasonable accommodations and modifications designed to provide meaningful access to educational benefits, 34 C.F.R. § 104.12; 34 C.F.R. § 104.44; 28 C.F.R. § 35.130(b)(7), and Section 504 also requires that students with disabilities receive a FAPE including the provision of regular or special education and related aides and services, 29 U.S.C. § 794; 34 C.F.R. § 104.33. The fact that MDE has failed to fulfill its obligation to ensure that all children needing such accommodations and services are identified as requiring them, does not preclude such students from seeking the services they are due under Section 504 and the ADA.

**B.** **Plaintiffs' Injuries are Fairly Traceable to MDE's Failure to Fulfill its Duties Under Special Education and Anti-Discrimination Laws.**

The causation prong of Article III standing requires only that a plaintiff's injuries be "fairly traceable" to the conduct of a defendant. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). The defendant's conduct need not be the proximate cause of the injuries alleged. *Lexmark Itn'l, Inc. v. Static Control Components, Inc.*, 572 U.S. __, 134 S. Ct. 1377, 1391 n.6 (2014). MDE argues that Plaintiffs' claims fail to satisfy the causation requirement because MDE's failures in monitoring FCS and GISD compliance with IDEA, Section 504 and the ADA are too "indirect" to satisfy causation. MDE Mot. to Dismiss at 35. As a threshold matter, MDE attempts to impose a standard of causation that is plainly erroneous. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977) ("[t]he injury may be indirect"); *Parsons*, 801 F.3d at 713 ("the fact that an injury is indirect does not destroy standing"). MDE also disregards Plaintiffs' allegations of injury caused specifically by MDE's numerous failures to fulfill its statutory obligations to ensure non-discrimination and provision of special education services.

The position of FCS and GISD as front-line providers of most special education services in no way means that LEAs are the only legally responsible actor under IDEA, Section 504 and the ADA. In fact, MDE's ultimate responsibility to ensure compliance with IDEA and the provision of special education services by the LEAs under its jurisdiction – i.e., the backstop to

safeguard the rights to special education of all Michigan students – renders MDE's failure to fulfill those responsibilities as a fairly traceable, if not direct cause, of Plaintiffs' injuries. *See Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 516 (E.D. Pa. 2014) (IDEA text and legislative intent "clearly signal that the SEA is to bear primary responsibility for ensuring that every child receives the FAPE that he or she is entitled to under the IDEA. While the SEA ordinarily delegates actual provision of this education to LEAs, the SEA by statute must step in where a LEA cannot or will not provide a child with a FAPE."); *see also* 20 U.S.C. § 1413(g) (provision of services directly by SEA). Consequently, violations by FCS and GISD of their legal obligations under IDEA, Section 504 and the ADA do not – and cannot – absolve the MDE of its bedrock responsibility to ensure the rights of Flint students guaranteed by those laws are effectuated and fully protected. *See Parsons*, 801 F.3d at 714 ("courts have held that the fact that a defendant was one of multiple contributors to a plaintiff's injuries does not defeat causation" for purposes of standing); *Ullmo*, 273 F.3d at 679 (SEA is "the primary authority for establishing a state's compliance with the IDEA").

Even more telling, MDE's argument, if accepted, would insulate the agency from judicial review of the exercise of its legally mandated duties to ensure non-discrimination on the basis of disability, and the provision of special education, for Michigan children. MDE offers no justification for its extraordinary contention

that it is shielded from review and redress by the courts where plaintiffs have pled specific and concrete allegations of SEA noncompliance with special education and anti-discrimination laws. This contention also flies in the face of established precedent in this and other Circuits affording plaintiffs standing to seek adjudication and remedies for violations of SEA duties under special education and anti-discrimination laws. *See e.g.*, *Ullmo*, 273 F.3d at 679 (SEA "may be held liable for the failure to provide a free appropriate public education" (internal quotations omitted)); *Gadsby v. Grasmick,* 109 F.3d 940, 953 (4th Cir. 1997) ("[T]he SEA is ultimately responsible for the provision of a free appropriate public education to all of its students and may be held liable for the state's failure to assure compliance with IDEA."). *see also B.C. v. Mount Vernon Sch. Dist.*, No. 14-3603-CV, 2016 WL 4945421, at *2 (2d Cir. Sept. 16, 2016) (unpublished) (Ex.5) (plaintiff parents had standing to sue both New York State Education Department and school district under IDEA, Section 504, and ADA).

### C.   Plaintiffs' Injuries will be Redressed by the Relief Requested in the Complaint.

Finally, the redressability element of standing is satisfied where there is "a likelihood that the requested relief will redress the alleged injury." *Steel*, 523 U.S. at 103. The "relevant standard" for redressability "is likelihood," *Parsons*, 801 F.3d at 715, and thus a plaintiff "must show only that a favorable decision is *likely* to redress his injury, not that a favorable decision will *inevitably* redress his

injury," *Beno v. Shalala*, 30 F.3d 1057, 1065 (9th Cir. 1994) (emphases in original).  Furthermore, even a "partial redress" of plaintiffs' injuries can "satisfy the standing requirement."   *Parsons*, 801 F.3d at 716.   In their Complaint, Plaintiffs request declaratory and injunctive relief that would remediate their injuries by compelling Defendants, including the MDE, to, *inter alia*, fulfill their obligations to identify and evaluate all students who require special education via methods including enhanced screenings for children ages 3-5; provide them with a FAPE by ensuring that IEPs are created and implemented; and institute systems and training to ensure proper disciplinary procedures. *See* Compl. at ¶ 395.  Thus, Plaintiffs clearly satisfy the standing requirement of redressability.

MDE nonetheless asserts that Plaintiffs have not alleged a redressable injury because their requested relief is dependent on other actors, namely the LEAs under MDE's jurisdiction.  This argument should be flatly rejected because it contradicts judicial precedent and implies that any injury caused by more than one defendant is not redressable.  Since MDE has ultimate responsibility for ensuring FCS and GISD compliance with IDEA, Section 504 and the ADA, an order requiring MDE to act in accordance with this responsibility is likely to at least partially redress Plaintiffs' injuries. *See Parsons*, 801 F.3d at 716-17.

Additionally, by joining both the SEA and the Flint LEAs, Plaintiffs' Complaint provides this Court the ability to redress all violations of law causing

Plaintiffs' injuries.   While redressability may be more difficult to establish when it depends upon "'choices made by independent actors not before the courts,'" *Young Am.'s Found. v. Gates*, 573 F.3d 797, 800 (D.C. Cir. 2009) (quoting *Defs.s of Wildlife,* 504 U.S. at 562), that obstacle does not apply to the instant case, both because FCS and GISD are not entirely independent (they are accountable to MDE), and are, in fact, before this Court as named defendants.[7]   As the Sixth Circuit has held, "the language and structure of [the] IDEA suggest that *either or both entities* [the SEA or LEA] may be held liable for the failure to provide a free appropriate public education."   *Ullmo*, 273 F.3d at 679 (internal quotations omitted) (alterations in original) (emphasis added); *see also Mount Vernon Sch. Dist.*, 2016 WL 4945421, at *2 (unpublished) (plaintiffs had standing to sue both SEA and LEA under IDEA, Section 504, and ADA).

In sum, the inter-agency responsibilities established under federal special education and anti-discrimination laws and the case law interpreting that legal framework demonstrate that, as an SEA, the MDE has specific and concrete obligations under IDEA, Section 504 and the ADA.   Plaintiffs' Complaint details the injuries-in-fact suffered by Plaintiffs as a result of MDE's violations of its

---

[7] MDE also makes passing reference to the parents of students as another "actor" upon which relief depends, MDE Br. at 35, 37, yet provides absolutely no explanation as to why relief would be hindered by the actions of parents.  Parents in this case have chosen to bring a lawsuit against MDE and the relevant LEAs precisely because they seek redress of their children's injuries and both parties are necessary to provide the requested relief.

statutory obligations, including the failure to 1) appropriately identify and evaluate students with disabilities; 2) provide special education services in the least restrictive environment; 3) provide appropriate procedural safeguards regarding school discipline; and 4) prevent discrimination against students on the basis of disability. MDE's failure to fulfill its duties under these laws has caused, and is continuing to cause, injuries-in-fact to Plaintiffs in the Flint schools. Granting Plaintiffs' requested relief would remedy these violations. Accordingly, Plaintiffs have standing to bring these claims against MDE for this Court's adjudication and determination.

### D. Plaintiffs Also Have Standing to Sue FCS for Failure to Conduct Appropriate Screenings.

In addition to MDE's standing argument, FCS also contends that Plaintiffs lack standing specifically with regard to their "declaratory and injunctive request seeking hearing, vision, and lead blood testing," FCS Br. at 33, because these screenings are already offered by the county health department, a different public entity. Under the elements of standing set forth above, this contention is without merit and should be rejected by this Court.

Federal law imposes "child find" obligations on FCS, in addition to the other Defendants, to identify and evaluate all children who require special education and related services. *E.g.*, 20 U.S.C. §§ 1412(a)(3)(A), U.S.C. 1413(a)(1), 1414(a)(1). Plaintiffs' Complaint alleges injury in the form of not receiving appropriate

screenings to identify and evaluate the needs of all Flint children with qualifying disabilities, which constitutes an invasion of the legally protected interests cited above.  This injury is also fairly traceable to FCS because FCS fails to ensure the screenings are conducted, in violation of its statutory child find obligations.  Lastly, redressability is satisfied because Plaintiffs' requested relief—an order requiring FCS to conduct the screenings, *see* Compl. at ¶ 395—would remedy Plaintiffs' injury.

FCS' contention that Plaintiffs lack standing because vision and health screenings may be available through the county health department is like a restaurant without wheelchair access arguing that would-be customers lack standing because they can buy food at the grocery store.  Plaintiffs have alleged that screenings are not performed on children who should receive them. *See* Compl. at ¶¶ 116, 134, 232, 241, 296, 317, 340); *Parsons*, 801 F.3d at 710 (in "ruling on a motion to dismiss for want of standing," a court "must accept as true all material allegations of the complaint" (internal quotation marks omitted)).[8]  The fact that another agency may offer screenings that are a necessary part of identifying and evaluating students with disabilities in no way relieves FCS of its

---

[8] The existence of "walk-in blood lead screening" as asserted by FCS, FCS Br. at 32, is not equivalent to Plaintiffs' requested relief of a declaratory judgment that "IDEA gives rise to an affirmative duty to conduct testing and enhanced screening of all children ages 3-5 and all those attending, or who may attend, FCS for elevated blood levels and a determination as to whether the child is eligible for special education services," Complaint ¶ 395.

affirmative child find obligations or diminishes Plaintiffs' ability to sue FCS to vindicate rights guaranteed by federal law. Thus, Plaintiffs have standing to sue FCS for the relief at issue.

### III. The Eleventh Amendment Does Not Bar Plaintiffs' Claims Against MDE.

Plaintiffs' ADA Title II claim against MDE is not barred by the Eleventh Amendment. Although the Supreme Court has not yet decided whether Congress validly abrogated state sovereign immunity in Title II of the ADA, Congress was "unequivocal" in its intent to abrogate sovereign immunity for all claims under the ADA, *see U.S. v. Ga.*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12202), and every Circuit Court of Appeals to consider the question in the context of public education has held that such abrogation was constitutionally valid. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 556 (3d Cir. 2007) (holding that state sovereign immunity was validly abrogated with respect to a Title II claim involving a disabled student's access to a sports program at a public institution of higher education); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006) (same holding with respect to a claim for failure to reasonably accommodate a disabled university student); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) (same for a Title II claim involving denial of accommodations for college student with a medical condition); *Assn'n for Disabled Ams. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005) (same for a

Title II claim involving denial of sign language interpreters for a college student); *see also Dean v. Univ. at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 195 n. 9 (2d Cir. 2015) (declining to rule on this issue but noting that the other circuits to do so have held that abrogation is valid).

The Sixth Circuit has not specifically addressed Title II abrogation in the context of public education claims, but district courts within the Sixth Circuit have embraced the consensus of other circuits. *See e.g.*, *Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475, 481 (N.D. Ohio 2007) (holding that Congress validly abrogated state sovereign immunity with respect to ADA Title II claim against state university). Although most public education Title II claims have arisen in the context of higher education, at least one district court in this circuit has approved the abrogation of sovereign immunity in other public education contexts as well. In *W.H. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 7206 (M.D. Tenn. Jan. 20, 2016), the court was "swayed by these other circuits' holdings" and found that "there is no reason to differentiate the analysis with respect to the right to public *primary* education." *Id*. at *29-30. This Court should reach the same conclusion here.

MDE offers no case law to support its contention that Eleventh Amendment immunity bars Title II claims. Instead, MDE argues that Plaintiffs fail to plead sufficient facts to state a claim under Title II. *See* MDE Br. at 40. But this is not really a sovereign immunity argument so much as a question of whether Plaintiffs

have stated a claim, and since Plaintiffs *have* sufficiently pleaded systemic Title II violations, *see* Part IV, Section B *infra* at 58, this argument fails.

For this reason, *Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016), is easily distinguishable. *Babcock* held that a Title II suit was barred because it alleged exclusion from "access to a specific facility" instead of the "public service, program, or activity" covered by Title II. *Id*. at 535. Because the plaintiff "failed to identify conduct that violates the ADA," her claim failed. *Id*. at 539. In other words, *Babcock* never reached the question of whether, had the plaintiff stated a Title II claim, state sovereign immunity would have barred it.

In this case, by contrast, Plaintiffs' ADA claim against MDE is based on discrimination in and exclusion from educational services, programs or activities, which are undeniably covered by Title II, not the alleged physical denial of access to facilities at issue in *Babcock*. Based on Plaintiffs' well-pleaded allegations of MDE's Title II violations, this court should hold that "with respect to the right to public primary education . . ., [42 U.S.C. §] 12202 validly applies to abrogate . . . Eleventh Amendment immunity." *W.H.*, 2016 U.S. Dist. LEXIS 7206, at *30.

Finally, if this Court nevertheless concludes that Title II of the ADA does not validly abrogate state sovereign immunity, Plaintiffs should be granted leave to amend their Complaint to add Brian J. Whiston, the state superintendent of public

instruction, as an official-capacity defendant under the *Ex Parte Young* doctrine.[9]

*See Carten v. Kent State Univ.*, 282 F.3d 391, 395-97 (6th Cir. 2002) (applying *Ex Parte Young* to allow plaintiffs' ADA Title II claim for prospective relief against state officials); *Nelson v. Miller*, 170 F.3d 641, 646-47 (6th Cir. 1999) (same). Sovereign immunity can be a formidable obstacle to the recovery of damages, but in this case Plaintiffs seek only prospective relief. Accordingly, if the court is persuaded that MDE itself has sovereign immunity, it should permit an amendment to the Complaint to name an MDE state official as defendant rather than dismiss Plaintiffs' otherwise valid ADA claim on a pleading technicality.

## IV. Plaintiffs Have Set Forth Sufficient Facts to Satisfy the Pleading Standards of *Twombly* and *Iqbal.*

### A. IDEA Claims Are Properly Pled.

Plaintiffs' allegations have sufficiently placed defendants on "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When deciding a motion to dismiss, the court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Iqbal*, 556 U.S. at 679). A well-pleaded complaint will suffice where "factual allegations [are]

---

[9] Under Michigan law, the state superintendent is the principal executive officer of MDE. Mich. Comp. Laws § 16.405.

enough to raise a right to relief above the speculative level" even where "recovery is very remote and unlikely" or "that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. The factual allegations, when assumed as true, must merely "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "legal conclusions" are "not entitled to the assumption of truth," facial plausibility is established where the pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is necessarily a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *id*. at 679, and draw all reasonable inferences in the plaintiff's favor, *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). Such interferences can arise from "the cumulative effect of the factual allegations," *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14 (1st Cir. 2011), including the sheer number of individual incidents alleged. *See e.g.*, *Modd v. Cty. of Ottawa*, 2010 WL 5860425, at *7 (W.D. Mich. Aug. 4, 2010) (Ex. 6) (holding that plaintiff plausibly alleged a policy and practice where 12 similar incidents were reported).

MDE and GISD's assertion that the Complaint "fails to meet the *Iqbal* pleading standard" as it merely contains "conclusory allegations that fail to specify individual acts of each defendant," (MDE Br. at 44); (GISD Br. at 24) is mistaken. Plaintiffs specifically assert that <u>MDE</u>: failed to provide necessary resources

(Compl. at ¶¶4, 16, 365); failed to ensure its public schools complied with IDEA, as required of Defendant by the statute (Compl. at ¶¶35, 42, 50, 381); failed to monitor and enforce child-find procedures, as required of Defendant by the IDEA (Compl. at ¶¶41, 350); failed to correct FCS and GISD's ongoing pattern of failing to provide procedural safeguards nor provided the expertise and resources required for FCS / GISD to do so themselves (Compl. at ¶ 381); and failed to ensure districts provide a FAPE for Plaintiffs and all similarly situated students with disabilities (Compl. at ¶388). The Complaint's detailed allegations specific to each Plaintiff, moreover, illustrate how Defendants' failures play out on a day-to-day, student-by-student basis.

Likewise, the Plaintiffs specifically assert that GSID failed to address sensory and behavioral needs of students in GISD-run schools (¶ 129); failed to provide special education services and evaluation for students with disabilities even when frequently prompted by concerned parents; (¶¶ 278, 328, 333, 334, 370); failed to apprise parents of contemplated behavior controlling techniques nor sought their permission (¶130); failed to assess the extent of lead exposure when conducting reevaluations (¶134); failed to screen and issue timely referrals pursuant to IDEA's child-find requirements (¶364); failed to provide procedural safeguards for students with disabilities (¶381); is responsible for a pattern of unduly harsh disciplinary measures including physical restraints and seclusion

techniques in violation of IDEA (¶381); failure to provide students with disabilities the same variety of programs and services offered to non-disabled students (¶384); and failed to provide a FAPE Plaintiffs and similarly situated students with disabilities. (¶394).

These detailed claims are more than naked, unadorned, "defendant-unlawfully-harmed-me" accusations, nor are they a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); 20 U.S.C. §§ 1412(a), 1414(a)-(e). Instead, they describe the specific ways in which Defendants have failed to comply with the IDEA, and they must be read together with the specific experiences of each named Plaintiff. As in other properly-pled IDEA cases, "these claims are not merely challenges to the specific alleged incidents involving the plaintiffs, but are challenges to blanket policies by all of the defendants that created the context in which the plaintiffs were subjected to numerous incidents of restraint and isolation that allegedly could [have] been avoided." *N.S. v. Tenn. Dep't of Educ.*, No. 3:16-cv-0610, 2016 U.S. Dist. LEXIS 91589 at *40 (M.D. Tenn. July, 14, 2016). Plaintiffs here, like in *N.S.*, have alleged that the MDE has failed to take any action to remediate the ongoing practices within the state that are in express violation of IDEA. Thus, Plaintiffs "have put forth enough of a foundation in the Complaint that they should have the opportunity to further develop the record and proceed with these causes of action."

*Id.* at *39.

There is no Sixth Circuit precedent, and Defendant MDE cites none, that require Plaintiffs to demonstrate the systemic violations are statewide. Plaintiffs do not have to show that there was a *statewide* failure to provide disabled students access to programs and services because MDE's specific legal obligation as an SEA is to ensure that *each* local school district provides appropriate educational services to students with disabilities. *See* 20 U.S.C. § 1412(a)(11)(A). The only case MDE cites to support its position is *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678 (9th Cir. 1997), which is inapposite. There, the court determined that the plaintiffs could not establish a systemic failure to overcome exhaustion where the Department did not, and had no reason to know, that special education juveniles requiring services were temporarily housed in a jail typically reserved for adults. *Id.* at 680. Upon discovery of the housing situation, by the commencement of the suit, the Department began to address the needs immediately. *Id.* While the court noted that the juveniles were held in one jail, it did not explicitly or implicitly address whether a statewide violation must be alleged in order to demonstrate a systemic violation. *Id.* at 682. Regardless, Plaintiffs here have alleged injuries occurring in multiple schools and facilities, all of which Defendants are aware require special education services, not merely one facility as in *Doe*.

At least one court in this circuit has explicitly rejected Defendant MDE's

proposition. *N.S.*, 2016 U.S. Dist. LEXIS 91589 at *35-36. That court, following the Second Circuit, determined that alleging local-level practices is sufficient to overcome a motion to dismiss because of "the danger of inconsistent findings and the uncertainty that the administrative process is equipped to handle system-wide adjudications." *Id.* at *35 (citing *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114-15 (2d Cir. 2004)).

As Plaintiffs have asserted specific, factual allegations that least raise a plausible inference of Defendants' liability, the motion to dismiss should be denied.

### B.     Title II ADA and Section 504 Claims Are Properly Pled.

In opposition to Plaintiffs' Title II and Section 504 claims, Defendants attempt to insert an animus requirement into the statutes that does not exist. MDE Br. at 44-45. That is not the standard in the Sixth Circuit:  The element of discriminatory intent can be established by "bad faith *or* gross misjudgment." *Campbell v. Bd. Of Educ. of the Centerline Sch. Dist.*, 58 F. App'x 162, 167 (6th Cir. 2003) (emphasis added) (Ex. 7); *N.S.,* 2016 U.S. Dist. LEXIS 91589 at *38; *W.H. v. Tenn. Dep't of Educ.*, No. 3:15-1014,  2016 U.S. Dist. LEXIS 7206 at *25 (M.D. Tenn. Jan. 20, 2016) ("The element of discriminatory intent, as laid out by the Sixth Circuit, does not require malice [], or a subjective intent to harm students with disabilities, but only a gross misjudgment that has a discriminatory effect"). It

is indeed MDE's gross misjudgment in oversight and allocation of necessary resources that is directly at issue at this case. (Compl. at ¶¶ 4, 16, 35, 42, 50, 350, 365, 381, 388). "Whether such misjudgment has occurred is a question that should be left to the trier of fact to determine." *W.H.*, 2016 U.S. Dist. LEXIS 7206 at *25; *see also N.S.*, 2016 U.S. Dist. LEXIS 91589 at *40 ("As to whether any such misconduct was carried out with deliberate indifference or gross misjudgment, this is, again, clearly a factual question that requires further development of the record. The Complaint, however, raises sufficient allegations to proceed.").

Plaintiffs have also sufficiently pled a series of discriminatory effects as a result of MDE's gross misjudgment. Plaintiffs have alleged that they are not entitled to the same variety of programs made available to nondisabled children, (Compl. at ¶¶ 108, 110, 112, 123, 125-26, 184, 209, 259, 261, 301, 384, 387, 391); that lack of disability identification causes repeatedly unnecessary segregations and seclusions from the general education environment, (Compl. at ¶¶ 108-10, 144, 148-49, 151, 177, 184, 209, 243, 273, 290, 301-02); and that children with disabilities are repeatedly sent home and/or suspended without the proper documentation that is required when suspending or sending home Plaintiffs' nondisabled peers. (Compl. at ¶¶ 110, 143, 254).

As Plaintiffs have alleged discriminatory intent and discriminatory effect, Plaintiffs have earned the right to "further develop the record and proceed with

these causes of action." *N.S.*, 2016 U.S. Dist. LEXIS 91589 at *39. Therefore, Defendants' motion to dismiss should be denied.

## V.   Plaintiffs' State-Law Claim Is Not for Educational Malpractice.

Defendant GISD mischaracterizes Plaintiffs' state-law claim as "educational malpractice," citing a doctrine that bars state-law *negligence* claims "in which a public school is alleged to have failed to adequately instruct a student in basic academic skills." *Page v. Klein Tools, Inc.*, 610 N.W. 2d 900, 903 (Mich. 2000); *see* GISD Br. at 25. GISD stretches that definition in an attempt to evade its responsibility under Michigan law to coordinate and oversee special education. *See* Mich. Comp. Laws § 380.1711(1)(h).

Contrary to GISD's argument, Plaintiffs do not bring a separate cause of action based on negligence. Rather, Plaintiffs allege in Count IV of their Complaint that FCS and GISD are violating the state-law requirements that they provide Plaintiffs with special education programs and services designed to develop their maximum potential. *See* Mich. Comp. Laws §§ 380.1711, 380.1751. These are not tort claims "alleging negligent instruction," *Page*, 610 N.W. 2d at 906; they seek declaratory and injunctive relief requiring compliance with specific duties assigned by statute.

*Woolcott v. State Bd. of Educ.*, 351 N.W.2d 601 (Mich. App. 1984), is dispositive.  There, the plaintiff was a hearing-impaired child who was denied the

services of an interpreter in her general education classes.  She sued under Mich. Comp. Laws § 380.1701, *et seq*., alleging that she was being deprived of her right under that statute to an appropriate education to maximize her potential as a student with disabilities.  The court, recognizing that the state statute provides that right, and indeed goes further than federal law, held the student had a cause of action for declaratory and injunctive relief to enforce Mich. Comp. Laws § 380.1701, *et seq*.  The same is true here.

The cases GISD cites, by contrast, were all lawsuits for money damages. But *Woolcott* itself distinguishes between damages lawsuits, which cannot be brought for violations of Mich. Comp. Laws § 380.1701, *et seq.,* and lawsuits seeking declaratory and injunctive relief to enforce Mich. Comp. Laws § 380.1701 *et seq.,* which can.  Because in the instant action Plaintiffs seek only declaratory and injunctive relief, Plaintiffs' state-law claim survives.

## <u>CONCLUSION</u>

For the reasons set forth above, MDE and FCS's motions to dismiss and GISD's motion for judgment on the pleadings should be denied.[10]

Respectfully submitted,

By: /s/ Daniel S. Korobkin

| | |
|---|---|
| Kary L. Moss (P49759) | Gregory M. Starner |
| Kristin L. Totten (P72942) | Lindsay M. Heck |
| Daniel S. Korobkin (P72842) | Walter A. Ciacci |
| Michael J. Steinberg (P43085) | Dominique N. Forrest |
| ACLU Fund of Michigan | Laura A. Grai |
| 2966 Woodward Ave. | 1155 Avenue of the Americas |
| Detroit, MI 48201 | New York, NY 10036-2787 |
| (313) 578-6800 | (212) 819-8200 |
| kmoss@aclumich.org | gstarner@whitecase.com |
| ktotten@aclumich.org | lindsay.heck@whitecase.com |
| dkorobkin@aclumich.org | walter.ciacci@whitecase.com |
| msteinberg@aclumich.org | dominique.forrest@whitecase.com |
| | laura.grai@whitecase.com |

David G. Sciarra
Gregory G. Little
Jessica A. Levin
Education Law Center
60 Park Place, Suite 300
Newark, NJ 07102                                  *Counsel for Plaintiffs*
(973) 624-1815
dsciarra@edlawcenter.org
glittle@edlawcenter.org
jlevin@edlawcenter.org

Dated:  January 13, 2017

---

[10] In the event that this Court determines the Motion should be granted, Plaintiffs request leave to amend the Complaint.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2017, I electronically filed the above document with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

 /s/  Daniel S. Korobkin

Daniel S. Korobkin (P72842)
ACLU Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6800
dkorobkin@aclumich.org