UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D.R. ET AL.,                              Case No. 16-13694

      Plaintiffs,                        SENIOR U.S. DISTRICT JUDGE
v.                                        ARTHUR J. TARNOW

MICHIGAN DEPT. OF ED., ET AL.,            U.S. MAGISTRATE JUDGE
                                          ANTHONY P. PATTI
      Defendants.
_____/

**ORDER DENYING DEFENDANT MDE'S MOTION TO DISMISS [23]; DENYING
DEFENDANT GISD'S MOTION FOR JUDGMENT [25]; GRANTING IN PART AND
DENYING IN PART DEFENDANT FCS'S MOTION TO DISMISS [22]**

Plaintiffs filed a class action civil rights action against Defendants Flint

Community Schools (FCS), Genesee Intermediate School District (GISD), and

Defendant Michigan Dept. of Ed. (MDE) on October 18, 2016. They alleged

systemic violations of the Individuals with Disabilities Education Act (IDEA), 20

U.S.C. § 1400 *et seq.*; discrimination based on disability in violation of § 504 of

the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794; Title II of the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*; and violations

of M.C.L. § 380.1701.

Defendants FCS and MDE filed Motions to Dismiss on December 8, 2016

[22, 23], and Defendant GISD filed a Motion for Judgment [25] on December 15,

2016. Defendants FCS and MDE filed replies [32, 33] on January 3, 2017.

Plaintiff responded [29] to these Motions on January 13, 2017. Defendant GISD filed a reply [31] on January 27, 2017. A hearing was held on these Motions on August 23, 2017.

For the reasons stated below, Defendant MDE's Motion to Dismiss [23] and Defendant GISD's Motion for Judgment [25] are **DENIED without prejudice**. Defendant FCS's Motion to Dismiss [22] is **GRANTED in part** as to Defendant's request to dismiss the claim for universal preschool, and **DENIED in part** as to the remainder of Defendant FCS's Motion to Dismiss.

## BACKGROUND

The proposed class is made up of the approximately 30,000 school-age children in Flint, Michigan at risk of developing a disability as a result of the elevated levels of lead in the drinking water. Against all Defendants, Plaintiffs bring claims of systemic violations of the Individuals with Disabilities Education Act (IDEA), specifically alleging: failure to develop and implement child find procedures; failure to provide free appropriate public education that confers a meaningful educational benefit in the least restrictive environment; failure to protect students' due process procedural safeguards in the disciplinary process; discrimination on the basis of disability and denial of access to educational services. Plaintiffs also allege that all Defendants have discriminated based upon disability in violation of § 504 of the Rehabilitation Act (§ 504) and in violation of

Title II of the Americans with Disabilities Act (ADA). As to Defendants FCS and GISC only, Plaintiffs allege violation of MCL § 380.1701 as a result of a failure to provide programs and services designed to develop each disabled child to their maximum potential. The individual facts pertaining to the representative Plaintiffs are found in the complaint at ¶¶ 90-348.

Plaintiffs' claims are all focused around requirements established by the IDEA. The IDEA provides federal money to help states educate children with disabilities. To qualify for this assistance, a state education agency (SEA) must demonstrate that it has policies and procedures in place that assure all children with disabilities in the state have access to a free appropriate public education (FAPE) in the least restrictive environment (LRE), tailored to the unique needs of each child through an individualized education program (IEP). *See* 20 U.S.C. § 1412(a)(1), (2), (4). The LRE is defined as follows: "[t]o the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).

The IDEA also provides that "[a] State funding mechanism shall not result in placements that violate the [LRE requirements], and a State shall not use a funding mechanism by which the State distributes funds on the basis of the type of setting in which a child is served that will result in the failure to provide a child with a disability a free appropriate public education according to the unique needs of the child as described in the child's IEP." 20 U.S.C. § 1412(a)(5)(B).

## LEGAL STANDARD

Defendants MDE and FCS move to dismiss the complaint under Rules 12(b)(6) and 12(b)(1). On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to provide fair notice to the defendant of what the claim is and the grounds upon which it rests. The Court must construe the complaint in the light most favorable to the Plaintiff and draw all reasonable inferences in the plaintiff's favor. *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829,

835 (6th Cir. 2012). The complaint must plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

It is currently unsettled in the Sixth Circuit whether a failure to exhaust administrative remedies is properly considered under Rule 12(b)(6) or Rule 12(b)(1). *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 431 (6th Cir. 2016). However, the Sixth Circuit has indicated that the distinction makes no difference in cases where there is no dispute as to the exhaustion-related factual findings. *See id.* Since it is undisputed that Plaintiffs did not exhaust, the Court will use the 12(b)(6) standard to resolve the exhaustion claims.

Rule 12(b)(1) mandates dismissal for "lack of jurisdiction over the subject matter." *Damnjanovic v. United States Dep't of Air Force*, 135 F. Supp. 3d 601, 603 (E.D. Mich. 2015). Whether Article III's case or controversy requirement is satisfied is a jurisdictional issue to be considered under Rule 12(b)(1).

Defendant GISD brings its Motion to Dismiss under Rule 12(c). "Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same *de novo* standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

Defendant FCS brings a Motion to Dismiss [22] on the basis of failure to exhaust, asserting there is no case or controversy regarding hearing, vision, or lead blood screenings that are already provided through the public health department; and that there is not a valid claim for universal preschool. Defendant GISD brings a Motion for Judgment [25], based upon a failure to exhaust, and further claims that Plaintiffs' state law cause of action is barred because Michigan does not recognize claims that sound in medical malpractice. Finally, Defendant MDE brings a Motion to Dismiss [23], based upon a failure to exhaust, 11th Amendment immunity for the ADA claim, lack of standing, and a failure to state a claim for which relief may be granted.

## 1. FAILURE TO EXHAUST [22, 23, 25]

All Defendants argue that Plaintiffs' claims must be dismissed for failure to exhaust administrative remedies as required under the IDEA. Plaintiffs respond that exhaustion is not required because it would be futile in this case since the alleged systemic violations of IDEA cannot be remedied through the administrative process. As an initial point, these arguments were made prior to the United States Supreme Court's decision in *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 197 L. Ed. 2d 46 (2017), which held that plaintiffs must exhaust in suits brought under statutes other than the IDEA if the remedy sought addresses the

denial of a FAPE. While no supplemental briefs have been submitted that address the relevance of this decision on the exhaustion argument, the complaint unequivocally concerns the alleged failure to provide a FAPE, and therefore the exhaustion requirement of § 1415(l) still applies to all claims, as originally argued by Defendants.[1]

It is clear from the plain language of the IDEA that exhaustion of administrative remedies is required before a party may file a suit under the act in federal court. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). The two principle exceptions to this requirement of exhaustion of administrative remedies are where the administrative procedures "would be futile or inadequate to protect the plaintiff's rights," or where "plaintiffs were not given full notice of their procedural rights under the IDEA." *Id.* at 917. Courts have applied the futile or inadequate exceptions to exhaustion when plaintiffs seek relief that is not otherwise available through the administrative process, *i.e.* allegations of "structural or systemic failure." *Jackie S. v. Connelly*, 442 F. Supp. 2d 503, 518 (S.D. Ohio 2006) (citations omitted).

---

[1] At the end of the hearing, Defendant FCS argued that the *Fry* decision mandated exhaustion if the complaint concerned a FAPE, seemingly arguing that because of this decision, Plaintiffs must exhaust and cannot be excused. There is nothing to suggest that the Supreme Court in *Fry* did away with exceptions to exhaustion in cases concerning a FAPE. The issue decided in that case considered artful pleading of claims concerning a FAPE under statutes other than IDEA, in order to avoid the exhaustion requirement. There was no discussion of exceptions to exhaustion, and certainly no indication that the case had any impact on existing and established case law surrounding exceptions to exhaustion under IDEA.

It is undisputed that Plaintiffs have not properly exhausted, and that they were given actual notice of the procedural rights. However, Plaintiffs argue that the systemic exception applies to excuse their lack of exhaustion.[2] While the Sixth Circuit has not expressly adopted this exception, nor explicitly defined the futility exception for systemic claims, courts around the country have accepted this excuse with varying parameters. *See Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997) (systemic claim involves allegations concerning system-wide issues requiring wholesale structural reform); *see also J.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004) (plaintiffs alleged system-wide problems when the "framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.").

Plaintiffs direct the Court to three cases they believe support the conclusion that they should be excused from exhaustion for alleging systemic violations. In the first case, *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir.

_____

[2] Plaintiffs also rely upon an emergency exception. This exception has never been recognized by the Sixth Circuit, or any district courts within the circuit. Further, the interpretations of such an exception by other courts suggest that the facts of this case would not justify a finding of an emergency exception because of the evidence before the Court. *See, e.g., Rose v. Yeaw*, 214 F.3d 206, 212 (1st Cir. 2000) (citation omitted) (requiring plaintiffs to provide evidence that the child faces irreversible damage if the relief is not granted). Plaintiffs merely state that the ongoing water crisis is an emergency that is "certain to cause Plaintiffs severe and irreparable harm if they are not able to seek relief now." [29 at 25]. While the Court acknowledges and appreciates the severity of the situation in Flint, the conclusory nature of this pleading and argument does not support an emergency exception.

2004), the plaintiffs were found to have alleged systemic violations under the IDEA. In that case, the Court surveyed applicable precedent and concluded that the common element in systemic cases was that:

> [T]he plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.

*Id.* at 114. Importantly, "[i]f each plaintiff had been forced to take his or her claim before a hearing officer and appeal to another local or state official, there would have been a high probability of inconsistent results," and the administrative record would not have been of "substantial benefit" to the Court. *Id.* Therefore, the Second Circuit panel found that the plaintiffs' challenges to the School District's failures to: prepare and implement IEPs, provide appropriate training to staff, perform timely evaluations and reevaluations, provide parents with procedural safeguards related to identification and evaluation of children with disabilities, and perform legally mandated responsibilities in a timely matter, represented systemic allegation because the challenge was not to the individual IEPs of the various plaintiffs, but rather to the School District's "total failure to prepare and implement [IEPs]." *Id.* at 115.

This case was factually similar to the pending matter. Here, Plaintiffs are seeking systemic relief in the form of injunctive relief on behalf of a large class.

The challenge is to the very framework and processes that the school district undertakes for every child, rather than individuals contesting their IEPs. The Court agrees with the logic in *J.S.* that challenges such as these are incapable of correction in the individual administrative exhaustion procedure, and instead, are of a systemic nature that is properly addressed by the Court.

The remaining two cases proffered by Plaintiffs to support their position are recent decisions by district courts in this circuit: *W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016); and *N.S. v. Tennessee Dep't of Educ., Knox Cty. Bd. of Educ.*, No. 3:16-CV-0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016). Motions to dismiss were denied in both because the Court found that the plaintiffs had alleged systemic violations rendering exhaustion futile.

*W.H.* concerned allegations that the school district and the SEA "denied LRE placements and placed [plaintiffs] in more segregated settings than necessary." *W.H.*, 2016 WL 236996, at *2. *N.S.* challenged the misuse and overuse of isolation and restraint techniques on children with disabilities. *N.S.*, 2016 WL 3763264 at *1.

In these cases, the courts considered the allegations to be systemic because the plaintiffs were not requesting that the court individually determine the plaintiffs' educational needs, the very subject of an administrative review; but

rather, were raising the question of whether the School District, in meeting the plaintiffs' educational needs, employed practices that caused the plaintiffs to be placed in more restrictive environments than necessary. *Id.* at *10. These claims were distinct from the local-level evaluation of the plaintiffs' individual needs, as demonstrated by the fact that the plaintiffs were not seeking individual relief, but rather, injunctions mandating systemic reforms to the school district policies and practices. *Id.*

Thus, in *N.S.*, the Court held that the plaintiffs were challenging systemic violations because the complaint contained:

> . . . specific examples of actions taken by the defendants (the use of "time out" terminology to replace "isolation" at the local level, instructions not to collect certain types of data at the state level), specific incidents that should have made the defendants aware of a problem (publicized events involving the use of "timeouts," a disproportionate number of incidents of isolation and restraint in KCS as compared to other school districts), evidence that the problem is widespread (although there are only two plaintiffs, they attended a number of schools throughout KCS), and specific state statutory mandates that the defendants have allegedly failed to uphold . . . .

*Id.* This established the systemic nature of the claims, and further placed Defendants on notice that systemic problems were on-going within the School District and subject to broad-based legal challenge. *Id.*

In this case, Plaintiffs seek systemic change within the School District's policies to ensure compliance with state and federal law. The complaint alleges four systemic violations: failure to develop and implement child find procedures;

failure to provide a free appropriate public education that confers a meaningful educational benefit in the least restrictive environment; failure to protect students' procedural due process protections in the disciplinary process; and discrimination on the basis of disability with accompanying denial of access to educational services.

Similar to *N.S.*, Plaintiffs here have alleged specific facts relating to incidents and publicized statistics showing disproportionate incidents of suspension of students with IEPs, thus providing the proof of similar allegations in the complaint. For example, the complaint states, "[i]n 2014-2015, 13.59% of special education students in FCS were suspended or expelled for more than ten days- more than five times the statewide suspension/expulsion rate of 2.48%." Compl. at ¶ 80. Additionally, Plaintiffs identify specific incidents that have occurred broadly across FCS, also lending credence to the application of the systemic exception here.

Defendants argue that they should have a chance to address these problems in the context of administrative proceedings. However, they do not explain how these allegations concerning the very core of the manner that the School District functions on a daily basis, implementing state and federal law could successfully be resolved in an administrative context. Further, because the class contains all

children in the School District, the time required for all of those affected to seek and obtain administrative consideration would be prohibitive and punitive.

Defendants also fail to demonstrate how the record of the administrative proceedings would benefit the Court in this case, yet another factor favoring a decision that these claims fall under the systemic exception to the exhaustion requirement. At the hearing, Defendant FCS conferred with individuals that were in the Courtroom, including the distributor of learning support services, and indicated that there have been two students who taken up administrative appeals. This does not support an argument that exhaustion is readily available, or that the system is functioning properly, and instead points to systematic problems given the facts alleged in the complaint surrounding the representative Plaintiffs and the high percentage of children in FCS qualifying under IDEA for IEPs.

Defendants also argue that because the complaint only alleges violations by FCS, and does not concern purported state-wide violations, the claims cannot be characterized as systemic in nature. *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1305 (9th Cir. 1992). However, the decision is not as persuasive as decisions from the 3rd Circuit, 2nd Circuit, and 10th Circuit. *See M.A. v. State Operated Sch. Dist. of Newark*, 344 F.3d 335, 343 (3d Cir. 2003); *Jose P. v. Ambach*, 669 F.2d 865, 869-70 (2d Cir. 1982); *New Mexico Ass'n for Retarded Citizens v. N.M.*, 678 F.2d 847, 851 (10th Cir. 1982). Moreover, the violations

challenged here pose a unique risk to children in FCS, requiring IEPs addressing prolonged lead exposure. Therefore, the Court concludes that these claims are unique to the FCS, and that it is difficult to understand how a statewide systemic violation could exist, since the dangerously polluted water exists as a systematic threat only to the children of the Flint community.

It is clear from Plaintiffs' complaint that the remedy they are seeking is a systemic change in the very way that Defendants identify, place, and educate all children in the Flint School District. The relief they are seeking is plainly not individual and could not be remedied by individual exhaustion since Plaintiffs are challenging the very efficacy of the system employed within the Flint District. Further, the representative Plaintiffs have emphatically illustrated that the alleged violations are widespread across the Flint schools and repetitive in nature. Thus, these systemic violations cannot be adequately exhausted through the administrative procedure and the systemic violation exception applies.

## 2. STANDING TO BRING CASE AGAINST MDE UNDER IDEA, TITLE II AND § 504 [23]

Defendant MDE argues that, as against MDE, Plaintiffs cannot establish an injury in fact, causation, or redressability. First, Defendant MDE argues that the claims asserted against it, *i.e.* that they failed to provide the appropriate monitoring, oversight, resources, and expertise required to help the local Defendants comply with the IDEA, are merely procedural and therefore not

actionable under the IDEA. *See D.S. v Bayonne Bd. of Educ.,* 602 F.3d 553, 565 (3d Cir. 2010) (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007)). A procedural violation of the IDEA is actionable "if it results in a loss of educational opportunity…or causes a deprivation of educational benefits." *D.S. v Bayonne Bd. of Educ.,* 602 F.3d 553, 565 (3d Cir. 2010). Plaintiffs' complaint contains many specific allegations that MDE's failure to monitor and ensure that adequate remedial services are timely provided has caused a loss of educational opportunity and deprivation of educational benefits. Therefore, the court finds Defendant's argument unpersuasive.

Defendant also cites authority purportedly establishing that there is no standing here because they were never placed on notice that each child was not receiving a FAPE. However, the cases that Defendant cites are not binding and deal with a failure to exhaust. Since the failure to exhaust has been excused, these cases are inapposite.

Defendant further argues that Plaintiffs have merely raised generalized complaints, has failed to establish causation, and does not state a separate, redressable injury, since redressability is dependent on other actors, including the local Defendants and parents. To the contrary, the complaint contains many specific alleged violations of IDEA, § 504, and the ADA. These allegations also demonstrate injuries in fact occurring as a result of these violations. Specifically, it

is alleged that MDE failed to provide the local Defendants with sufficient funding and support to enable it to meet the requirements of the IDEA. It is also alleged that their monitoring was inadequate.

As to the asserted causation requirement, there is no need to allege direct causation to establish standing. Rather, a plaintiff's injuries must be "fairly traceable" to the defendant's actions. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). An indirect injury does not destroy standing. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 713 (6th Cir. 2015). In this case, the complaint presents allegations of injury caused by the failure of MDE to fulfill its critical statutory obligations under IDEA, § 504, and the ADA, to the children it is responsible for. Considering its direct role in monitoring and ensuring compliance with the IDEA, the alleged injuries are unquestionably the result of Defendant MDE's actions. *See Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) (SEA "may be responsible for violations of the IDEA when the state agency in some way fail[s] to comply with its duty to assure that the IDEA's substantive requirements are implemented," including "systemic violation" of the state's IDEA responsibilities).

Finally, as to the argument that the injuries are not redressable because the relief depends on other actors to establish standing, Plaintiffs are not required to show that a favorable decision will correct all of the injuries alleged, but rather,

that a favorable decision is likely to establish at least a partial redress. *See Parsons*, 801 F. 3d at 716. The requested relief seeks an order requiring MDE to fulfill its obligations to identify and evaluate all children requiring special education through enhanced screening processes, and to provide them with a FAPE, ensuring that IEPs are implemented, and developing effective training and systems to ensure proper disciplinary procedures. It is clear that a favorable ruling on these claims would provide at least a partial redress to the injuries alleged. Moreover, since the local Defendants are parties to this case, there is no argument that other actors, not before the Court, would affect redressability. As for the parents, they have joined in the lawsuit, and there is no reason to believe that their presence would hinder redressability either.

Defendants also argue that Plaintiffs lack standing for the § 504 and ADA claims because they have failed to allege an injury under these acts, as not every proposed member of the class is necessarily disabled and eligible for services under the ADA or § 504. It is asserted that this "hypothetical" injury is not sufficient to establish standing. *See Whitmore v Arkansas*, 495 U.S 149, 155 (1990). However, this argument ignores the many class members who *are* currently disabled. There is no argument requiring a finding of a lack of standing for these Plaintiffs, and Defendant does not address this argument in its reply.

Considering the above, Plaintiffs have standing to bring the IDEA, ADA, and § 504 claims against Defendant MDE.

### 3. 11TH AMENDMENT IMMUNITY BARS ADA CLAIM AGAINST DEFENDANT MDE [23]

Defendant MDE argues that it has Eleventh Amendment immunity as to the ADA claim. "Congress has expressed an unequivocal desire to abrogate Eleventh Amendment immunity for violations of the ADA." *Babcock v. Michigan*, 812 F.3d 531, 534 (6th Cir. 2016). When determining whether the 11th Amendment applies for violations of the ADA, Courts are instructed to:

> [D]etermine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006).

Defendant focuses on the first part of this test that requires the Court to determine "which aspects, if any, of the Defendants' alleged conduct violated Title II." *Id.* at 535. It contends that Plaintiffs have failed to state a claim under Title II of the ADA, and thus immunity must apply.

As Plaintiffs point out, the Sixth Circuit has not yet ruled on whether the 11th Amendment is abrogated in the context of public education. However, Plaintiffs correctly point to many other circuits that have found state immunity was

abrogated in the context of higher public education. *See, e.g.*, *Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 555 (3d Cir. 2007); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005); *W.H.*, 2016 WL 236996. In these cases, courts have abrogated 11th Amendment immunity in the context of public education, and applied their reasoning to a claim concerning primary education, seeing no reason why the reasoning in higher education cases should not equally apply to the primary education context.

Defendants have offered no binding or persuasive authority in which a court has held that state immunity is not abrogated in the context of public education. Rather, they proffer a case in which the Court found that there was not a valid ADA claim stated, and ended its analysis there. *Babcock*, 812 F.3d at 534-35. As a result, the court did not rule on the issue of whether the Eleventh Amendment barred Title II claims. Therefore, the Court is not persuaded to disregard the significant case law abrogating 11th Amendment immunity in the cases concerning public education. Accordingly, 11th Amendment immunity does not apply to Plaintiffs' ADA claim.

## 4. FAILURE TO STATE A CLAIM

### a. IDEA

Defendants MDE and GISD first argue that Plaintiffs have not stated a valid IDEA claim, asserting first that they have failed to exhaust their claims (an argument resolved above), while also arguing that the claims are too vague, merely containing broad, conclusory allegations. However, Plaintiffs have pled valid claims in their detailed challenges to the policies and practices of the Defendants in a complaint that runs over 130 pages, and have included specific examples illustrating these allegations through the representative Plaintiffs.

Plaintiffs allege that Defendant MDE: "failed to provide necessary resources (Compl. at ¶¶ 4, 16, 365); failed to ensure its public schools complied with IDEA, as required of Defendant by the statute (¶¶ 35, 42, 50, 381); failed to monitor and enforce child-find procedures, as required of Defendant by the IDEA (¶¶ 41, 350); failed to correct FCS and GISD's ongoing pattern of not providing procedural safeguards nor the expertise and resources required for FCS / GISD to do so themselves (¶ 381); and failed to ensure districts provide a FAPE for Plaintiffs and all similarly situated students with disabilities" (¶ 388). [29 at 52-53]. These allegations are detailed and address claims specific to each Plaintiff, showing that this is a common occurrence across the school district, impacting many children.

Plaintiffs further assert that: "GSID failed to address sensory and behavioral needs of students in GISD-run schools (¶ 129); failed to provide special education services and evaluation for students with disabilities even when frequently prompted by concerned parents (¶¶ 278, 328, 333, 334, 370); failed to apprise parents of contemplated behavior controlling techniques nor sought their permission for such actions (¶130); failed to assess the extent of lead exposure when conducting reevaluations (¶ 134); failed to screen and issue timely referrals pursuant to IDEA's child-find requirements (¶ 364); failed to provide procedural safeguards for students with disabilities (¶ 381); engaged in a pattern of unduly harsh disciplinary measures, including physical restraints and seclusion techniques in violation of IDEA (¶ 381); failed to provide students with disabilities the same variety of programs and services offered to non-disabled students (¶ 384); and failed to provide a FAPE to Plaintiffs and similarly situated students with disabilities" (¶ 394). [29 at 53-54]. These specific allegations put Defendants on notice as to the factual basis for the complaint and satisfies the 12(b)(6) standard.

### b.  TITLE II ADA AND § 504 CLAIMS

Defendant MDE argues that Plaintiffs have not alleged Title II ADA and § 504 claims because: some of the class members are not disabled; there is only a disagreement over the level of services provided, not a denial of access; and there

is no discriminatory animus plead, which is fatal under Title II. Defendant MDE further alleges that the claims are too vague and conclusory to be sustained.

The sufficiency of Plaintiffs' ADA and § 504 claims will be evaluated together. *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 452-53 (6th Cir.2008). To state a valid claim under both statutes, Plaintiff must demonstrate that:

> (1) The plaintiff is a 'handicapped person' under the Act; (2) The plaintiff is 'otherwise qualified' for participation in the program; (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*Campbell v. Bd. of Educ. of the Centerline Sch. Dist.*, 58 Fed. Appx. 162, 165 (6th Cir. 2003).

In this Circuit, in the context of FAPE claims, a mere disagreement in FAPE is not sufficient to show discrimination; rather, discriminatory intent must be established by "bad faith or gross misjudgment" in the context of disabled children. *Campbell*, 58 F. App'x at 167; *see also G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623, 635 (6th Cir. 2013).

Plaintiffs have alleged that: "they are not entitled to receive the same variety of programs made available to nondisabled children, (Compl. at ¶¶ 108, 110, 112, 123, 125-26, 184, 209, 259, 261, 301, 384, 387, 391); lack of disability identification repeatedly causes unnecessary segregation and seclusion from the general education environment, (¶¶ 108-10, 144, 148-49, 151, 177, 184, 209, 243,

273, 290, 301-02); children with disabilities are repeatedly sent home and/or suspended, without the proper documentation required when suspending or sending home Plaintiffs' nondisabled peers," (¶¶ 110, 143, 254). [29 at 57].

It is undisputed that there are disabled Plaintiffs. Plaintiffs also allege that children are not being properly assessed and evaluated, so they may well be able to establish that even more are disabled. Again, Defendants fail to show why the fact that some of the class members may not be disabled should cause the entire claim to be dismissed.

Defendants are correct that a mere failure to provide the FAPE as required by the IDEA is insufficient to support a § 504 or Title II ADA claim. However, Plaintiffs have challenged MDE's professional judgment in oversight of the FCS, and the allocation of necessary resources, and asserted that this has caused discriminatory effects. Whether this judgment rises to the level of gross misjudgment, to qualify as discriminatory, is a question of fact that needs to be developed and brought before a trier of fact to determine. Therefore, as a threshold matter, Plaintiffs have stated a valid claim under § 504 and the ADA.

## 5. PLAINTIFF'S STATE LAW CLAIM IS NOT FOR EDUCATIONAL MALPRACTICE

Defendant GISD argues that Plaintiffs' state law claim is one for "educational malpractice," and as such, is barred, citing decisions that refuse to accept state-law negligence claims "in which a public school is alleged to have

failed to adequately instruct a student in basic academic skills." *Page v. Klein Tools, Inc.*, 610 N.W. 2d 900, 903 (Mich. 2000). However, the cases cited by Defendant GISD all alleged negligent instruction, and sought monetary damages. Plaintiffs here bring a claim under M.C.L. § 380.1711(1)(h)m, which addresses the responsibility to oversee and coordinate special education. In *Woolcott v. State Bd. of Educ.*, 351 N.W.2d 601 (Mich. App. 1984), the Court held that students may have a cause of action under M.C.L. § 380.1701, *et seq.*, for declaratory and injunctive relief. Therefore, Defendant's argument is not valid.

**6. STANDING TO SUE FOR FCS FAILURE TO CONDUCT APPROPRIATE SCREENINGS**

Defendant FCS contends that Plaintiffs lack standing as to their declaratory and injunctive request seeking hearing, vision, and lead blood testing, because the screenings are currently offered by the county health department. Because these tests are mandated by the Michigan Public Health Code, M.C.L. § 333.9301, which meets the "full individual evaluation" requirements under the IDEA (20 U.S.C. §1414; 34 C.F.R. § 300.304(c)(4); 34 C.F.R. § 300.301(a)), Defendant argues that there is no case or controversy as to this claim, since there is no injury that would be redressed in the case of a favorable outcome for that claim.

As explained at the hearing, these screenings are not presented in all of the schools in the School District. Considering the fact that every child in the School District is exposed to the dangers of lead in the water, the presence of these tests in

a few schools is not equivalent to the relief Plaintiffs are requesting, that children at all schools in FCS have access to these screenings. Therefore, this claim for relief will not be dismissed.

### 7. UNIVERSAL PRESCHOOL CLAIM

Finally, Defendant FCS argues that the Court should dismiss under Fed. R. Civ. P. 12(b)(6) the claim seeking universal preschool, because only the state legislature can create such a program, and there is no legal requirement under any of the statutes which Plaintiffs have invoked that provide for this relief. *See* Michigan Constitution, Article 8, Section 2 ("[t]he legislature shall maintain and support a system of free public elementary and secondary schools as defined by law.").

Plaintiffs do not respond to any of the arguments presented by Defendant, merely stating in a footnote that the "provision of early interventions including universal preschool is an essential remedy to fulfill Defendants' obligations regarding child find and the provision of FAPE." There is no showing that this Court has the power to order the creation of public universal preschool. *See, e.g.*, *Leandro v. State*, 346 N.C. 336, 357, 488 S.E.2d 249, 261 (1997) ("[T]he administration of the public schools of the state is best left to the legislative and executive branches of government."). Therefore, this claim for relief is dismissed.

Accordingly,

**IT IS ORDERED** that Defendant MDE's Motion to Dismiss [23] and Defendant GISD's Motion for Judgment [25] are **DENIED**.

**IT IS FURTHER** ORDERED that Defendant FCS's Motion to Dismiss [22] is **GRANTED in part** as to Defendant's request to dismiss the claim for universal preschool and **DENIED in part** as to the remainder of Defendant FCS's Motion to Dismiss.

**SO ORDERED**.

<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Dated: September 29, 2017          Senior United States District Judge