**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| D.R., as a minor through parent and next friend Dawn Richardson, A.K., as a minor through parent and next friend, Angy Keelin, C.D.M., as a minor throught parent and next friend Crystal McCadden, C.M., as a minor through parent and next friend Crystal McCadden, J.T., as a minor through parent and next friend Nakiya Wakes, N.S., as a minor through parent and next friend Nakiya Wakes, J.W., as a minor through parent and next friend Kathy Wright, C.D., as a minor through parent and next friend Twanda Davis, D.K. as a minor through parent and next friend Rachel Kirksey, M.K. as a minor through parent and next friend Rachel Kirksey, O.N., as a minor through parent and next friend Manita Davis, D.T. as a minor through parent and next friend Manita Davis, D.D. as a minor through parent and next friend Chandrika Walker, C.W. as minor through parent and next friend Chandrinka Walker, J.B. as a minor through parent and next friend Jeree Brown, individually and on behalf of all similarly situated persons, | Case No. 16-CV-13694-AJT-APP<br>Hon. Arthur J. Tarnow<br>Mag. Judge Anthony P. Patti<br><br>**DEFENDANTS' FLINT COMMUNITY SCHOOLS' AND GENESEE INTERMEDIATE SCHOOL DISTRICT'S JOINT MOTION IN LIMINE TO EXCLUDE EVIDENCE OF INDIVIDUAL PLAINTIFFS FROM PRELIMINARY INJUNCTION HEARING** |
|       Plaintiffs,<br>v.<br><br>Michigan Department of Education, Genesee Intermediate School District and Flint Community Schools,<br><br>      Defendants. | |

## **MOTION**

NOW COME Defendants Flint Community Schools ("FCS") and Genesee Intermediate School District ("GISD") and for their Motion in Limine to Exclude Evidence of Individual Plaintiffs from Injunction Hearing, state the following.

1. Plaintiffs' Motion for Preliminary Injunction and Preliminary Witness List seek to introduce evidence regarding eight of the 17 individual Plaintiffs through witness testimony and based on the Independent Medical Examinations ("IMEs") of the two named experts.

2. Defendants now seek to exclude evidence of the individual Plaintiffs as it is inadmissible as a matter of law, irrelevant under Fed. R. Civ. P. 401 and 402, and would cause undue delay under Rule 403 by forcing eight min-trials during the injunction hearing.

3. A conference with Plaintiffs' counsel during which defense counsel explained the nature and bases for this Motion but Defendants have not obtained concurrence in the relief sought.

WHEREFORE, the Court should exclude any evidence regarding the individual Plaintiffs, including but not limited to witness testimony about their general or special education experiences, medical histories, expert testimony regarding their IMEs or Individualized Education Programs ("IEPs").

Respectfully submitted:

BUTZEL LONG, a professional corporation

By: */s/ Brett J. Miller*
     Brett J. Miller (P68612)
Donald B. Miller (P23419)
Frederick A. Berg, Jr. (P38002)
Sheldon Klein (P41062)
Attorneys for Defendant FCS
150 W. Jefferson, Suite 100
Detroit, MI 48226
313-225-7020
miller@butzel.com
berg@butzel.com
Klein@butzel.com
millerbr@butzel.com


By: /s/ John L. Miller
Timothy J. Mullins (P28021)
John L. Miller (P71913)
Giarmarco, Mullins & Horton, P.C.
*Attorneys for Defendant Genesee ISD*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
jmiller@gmhlaw.com


Dated: January 22, 2018

3

## **BRIEF IN SUPPORT**

## **STATEMENT OF ISSUES PRESENTED**

Whether evidence of individual Plaintiffs who did not undergo the two-stage screening process advanced by Plaintiff should be excluded from the preliminary injunction hearing.

## STATEMENT OF CONTROLLING AUTHORITY

*Rice v Walls*, 213 F2d 693, 697 (6th Cir. 1954).

Fed. R. Evid. 401

Fed. R. Evid. 402

Fed. R. Evid. 403

# FACTS

In their Motion for issuance of a mandatory injunction "Plaintiffs ask this court to order immediate implementation of a comprehensive child find system that will screen all children in Flint for suspected disabilities and provide for full neuropsychological evaluations for children who qualify." [Dkt 62, Pg ID 1885]. According to Plaintiffs, this would involve a two-stage pre-special education screening system where, "[a]t the first stage, an initial screening mechanism will be used to find children with suspected disabilities." [*Id*., at Pg ID 1886]. The second stage would be a full neuropsychological evaluation. [*Id*.].

In support of their Motion, Plaintiffs utilize two supposed "experts" who evaluated eight of the 17 individual Plaintiffs named in this case and plan to call witnesses relating to the individual Plaintiffs' Individualized Education Programs ("IEPs")(the special education or related services provided to the students). It is undisputed that despite the relief sought, the initial "stage one" screening mechanism was <u>not</u> conducted on any individual Plaintiff by Plaintiffs' named experts.

Nonetheless, Plaintiffs' Motion for Preliminary Injunction discusses these "expert" IMEs at length. See Dkt 62, Pg ID 1860-1868; 1878-1880; 1888. Essentially, the IMEs take issue with the Plaintiffs' existing IEPs and suggest additional services for the children, even though only three of the eight evaluated are

enrolled in any school operated by any Defendant.[1] Plaintiffs conclude that alleged "deficiencies" cited in these eight evaluations warrants an injunction order to implement the two-stage pre-special education screening suggested by Plaintiffs. [Dkt 62 at Pg ID 1888].

In the November 20, 2018 status conference in this matter, this Court set forth the parameters of the hearing noting that three points were at issue: (1) what is in place, (2) what should be done and what, if anything is missing or needed, and (3) whether is it adequate. The discussion centered around the overarching policies, procedures, and programs in place and did not contemplate fact-finding regarding each individual Plaintiff's IEP.[2] As such, Defendants now move to exclude evidence relating to the individual Plaintiffs.

---

[1] The eight evaluated are CDM, **ON**, **DT**, JT, DR, CW, **DK**, and JB (**bold** are current FCS students, underline never attended FCS).

[2] Defendants previously filed Motions to Dismiss arguing that individual claims and disputes regarding IEPs must first be exhausted through the administrative process as an ALJ could award that relief including systemic relief. Plaintiffs' averred that they were not raising any individual grievances. In denying Defendants' Motions, this Court held that Plaintiffs "claims were distinct from the local-level evaluation of the plaintiffs' individual needs, as demonstrated by the fact that the plaintiffs were not seeking individual relief, but rather, injunctions mandating systemic reforms to the school district policies and practices" [Dkt 46, Pg ID 1630] and "[Defendants] do not explain how these allegations concerning the very core of the manner that the School District functions on a daily basis, implementing state and federal law could successfully be resolved in an administrative context" [*Id.*, Pg ID 1631] and Defendants also fail to demonstrate how the record of the administrative proceedings would benefit the Court in this case." [*Id.,* Pg ID 1632].

# ARGUMENT

## I. EVIDENCE REGARDING INDIVIDUAL PLAINTIFFS SHOULD BE EXCLUDED FROM THE INJUNCTION HEARING.

Evidence of individual Plaintiffs must be excluded from the injunction hearing because (A) it is inadmissible as a matter of law as Plaintiffs are judicially estopped from raising the issues and, by law, claims that have administrative relief cannot be granted by injunction before exhausting those remedies; (B) the evidence is irrelevant to the hearing; and (C) the evidence is more prejudicial than probative given the eight mini-trials that would be required to address these issues.

### A. *Evidence Regarding Individual Plaintiffs That Could Have Been Addressed Through the Administrative Process is not Admissible as a Matter of Law.*

Evidence regarding individual Plaintiffs is inadmissible in the injunction hearing given the procedural posture of this case. First, as noted in Defendant FCS's Response to Plaintiffs' Motion for Preliminary Injunction, Plaintiffs are judicially estopped from even raising this issue after successfully arguing to this court that individual challenges to IEPs were not at issue. [Dkt 84, Pg 4730-34]. In denying the Defendants' Motions to Dismiss, this Court held that Plaintiffs' "claims were distinct from the local-level evaluation of the plaintiffs' individual needs, as demonstrated by the fact that the plaintiffs were not seeking individual relief, but rather, injunctions mandating systemic reforms to the school district policies and practices" [Pg ID 1630]. Plaintiffs are now seeking to present evidence through

3

witnesses and experts that relates solely to the individual needs of the individual Plaintiffs. The evidence is not admissible as the Plaintiffs are judicially estopped from litigating these individual claims.

Second, as a matter of law, "where a statute provides for an administrative remedy[,] a party is not entitled to injunctive relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Rice v Walls*, 213 F2d 693, 697 (6th Cir. 1954). As previously briefed by Defendants, there is a robust administrative system whereby parents can contest the special education services provided to children and receive additional services or, in some cases, systemic changes. Yet, Plaintiffs are challenging the content of their IEPs and it is undisputed that an administrative remedy exists for these issues. Therefore, any alleged deficiencies in any Plaintiffs' IEP could have been exhausted through the administrative process. Plaintiffs did not exhaust. Plaintiffs cannot claim that these unexhausted issues should form the basis for injunctive relief.

### B. Evidence Regarding Individual Plaintiffs is not Relevant to the Relief Sought or the Injunction Factors.

Under Fed. R. Civ. P. 401(b) evidence is only relevant if "the fact is of consequence in determining the action." Further, "[i]rrelevant evidence is not admissible." Fed. R. Civ. P. 402. Evidence relating to the individual Plaintiffs is not of consequence in determining a preliminary injunction. First, none of the children involved Plaintiffs' expert reports actually received the two-stage pre-screening

process recommended by Plaintiffs. Second, the sample size of eight Plaintiffs is irrelevant to any argument that Defendants are somehow not complying with applicable law and therefore 30,000 children should be screened. Finally, many of the students are not currently enrolled in schools operated by any Defendant and therefore evidence regarding these Plaintiffs is irrelevant because there is no injunctive relief that the Defendants can provide to non-students.

As to the first point, Plaintiffs' expert reports specify precisely what examinations were given to each of the eight Plaintiffs and none of them received the two-stage screening proposed by Plaintiffs or even the full stage 1 Vineland II and WRIT pre-screenings. For instance, Plaintiff JB, who is no longer an FCS student, did not receive a Vineland II or WRIT evaluation by Plaintiffs' expert yet Plaintiffs use JB as an alleged example of why all 30,000 children in the Flint area should be given Vineland II and WRIT pre-screenings.[3] The evaluation of JB further has no suggestions as to whether the two-stage pre-screening or a neuropsychological examination would be of any benefit to his education. Another Plaintiff, CDM, when enrolled in FCS, had an IEP for special education services. CDM was evaluated by one of Plaintiffs' experts without the use of a Vineland screening. Plaintiff DK, as another example, did not receive a Vineland II or WRIT.

---

[3] A few students, such as JB and DK were given a Vineland III screening by the expert. However, the Plaintiffs advocate use of the Vineland II – a different version of the survey.

5

Because Plaintiffs' experts did not bother to use their proposed pre-screening system on the Plaintiffs, evidence relating to their evaluations of these Plaintiffs has no probative value as to whether this court should order the pre-screening system.

Evidence of individual Defendants is further irrelevant to any of the factors considering in weighing any of preliminary injunction. For instance, because the evidence is irrelevant to the relief sought, it is not probative as to whether the movant has shown a strong or substantial likelihood or probability of success on the merits. Moreover, the evidence is irrelevant as to whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued given, again, that the proposed screening was not conducted on the Plaintiffs. The evidence is also not probative as to issues regarding substantial harm to third parties or the public interest given the evidence relates to individuals challenging their own IEPs. *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995).

Regarding the second point, Plaintiffs' claim that the results of the testimony or IMEs conducted by Plaintiffs' purported experts regarding eight named Plaintiffs somehow shows "deficiencies in Defendants' existing child find procedures" that warrant the two stage pre-screening system of 30,000 children. [Dkt. 62, Pg ID 1888; Dkt 1 at ¶¶ 8, 10-11, 60]. However, Plaintiffs' sample size of eight out of 30,000 is so infinitesimal as to be of no probative value and does not even provide an example for each school in the Flint School district. A sample size must be sufficient to

6

provide reliable and probative data. *Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 261, 267 (6th Cir. 2010). In the discrimination context, the Sixth Circuit and this court have repeatedly noted that small sample sizes render such statistics of little use. *See, e.g. Abbott,* 912 F.2d at 873; *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 944 (6th Cir. 1987) *Black v. City of Akron,* 831 F.2d 131, 134 (6th Cir.1987); *Toyee v. Reno,* 940 F.Supp. 1081, 1093 (E.D.Mich. 1996). *See Hooper v. Cargill, Inc.,* 187 F.3d 635, 1999 WL 552560 at *4 (6th Cir. 1999) (extremely small sample size of three insufficient); *Gault v. Zellerbach,* 172 F.3d 48, 1998 WL 898831 at *2 (6th Cir. 1998) (sample size of six too small); *Martin v. United States Playing Card Co.,* 172 F.3d 48, 1998 WL 869970 at *4–5 (6th Cir.1998)(sample sizes of seven or eleven insufficient to demonstrate pretext); *Tinker v. Sears, Roebuck & Co.,* 127 F.3d 519, 524 (6th Cir.1997) (sample size of thirteen too small); *Anderson v. Premier Industrial Corp.,* 62 F.3d 1417, 1995 WL 469429 at *6–8 (6th Cir.1995)(sample of eight insufficient); *Osborne v. Brandeis Machinery & Supply Corp.,* 1994 WL 486628 at *2 (6th Cir. June 15, 1994)(eight person sample too small to support discrimination case); *Simpson v. Midland-Ross,* 823 F.2d 937, 943 (6th Cir. 1987) (questioning sample size of seventeen). Accordingly, Plaintiffs' argument that because eight children disagree with their existing special education evaluations the

7

Court should order a two-stage pre-screening process for 30,000 children is utterly without merit and has no probative value to the preliminary injunction motion.

Finally, only three of the eight students evaluated are currently enrolled with FCS and to the extent Plaintiffs wish to introduce evidence relating to prospective relief for students who are not enrolled with Defendants, the evidence is irrelevant. The same is true for the "30,000 school age children" Plaintiffs seek to screen. Only approximately 8,000 children are enrolled in FCS and GISD schools.[4] Defendants cannot provide services for students who are not enrolled and they would not even be able to locate.

### C. *Evidence Regarding the Individual Plaintiffs Would Lead to Undue Delay and Eight Mini-Trials.*

Even assuming any evidence relating to the individual Plaintiffs is somehow relevant, it must still be excluded under Fed. R. Civ. P. 403. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

---

[4] See, publicly available school population data at: https://goo.gl/vAzEdG and https://goo.gl/eGZG3F.

Any evidence relating to the eight individual Plaintiffs who were examined by Plaintiffs' proclaimed experts would lead to eight mini-trials as to their medical histories, whether lead impacted their medical diagnoses, their IMEs, special education evaluations, special education services, and questions regarding the adequacy of their individual special education services. Any alleged probative value, therefore, is far outweighed by the danger of confusing the issues, undue delay, and wasting time.

As an example, Plaintiffs have listed the mother of Plaintiff JB as a witness for the hearing and Plaintiffs' expert conducted an IME of JB. Plaintiff's "expert" disagrees with JB's IEP that provides for occupational therapy, socialization classes, and speech and language classes and the expert seeks more frequent sessions than currently provided. During the hearing, FCS will have to present evidence of whether JB was exposed to lead in the water or tested for elevated blood lead levels, the delay of JB's mother in providing consent to have him evaluated, his pre-lead situation diagnoses of ASD, the results of the 10 separate evaluative tools used by FCS to determine his special education needs weighed against only two tools used by Plaintiffs' expert, witness testimony as to why he was provided the services he was provided, observations of his teacher and staff, and provide evidence as to how services provided to JB meet each specific regulatory requirements relating to JB such as MARSE Rules 340.1749a, 340.1745, and 34 CFR 300.34(c)(14).

In addition, Plaintiffs have listed Dawn Richardson as a witness for the hearing, who is the mother of Plaintiff DR. DR, formerly a student with FCS, had an IEP in place since the 2011-2012 school year for speech and language. [Dkt. 1, ¶ 93]. According to Plaintiffs, Ms. Richardson disclosed an ASD diagnosis in 2012-2013 school year, two-years before the water situation. [Dkt. 1 ¶ 94]. [Pg ID 1966]. FCS has no record of such diagnosis. Regardless, substantial time at the hearing will be spent addressing any issues of causation and the relevance of issues pre-dating the water situation. Further, while with FCS, Plaintiff DR received 50-60 minutes of elementary resource services four to five times per week and received social work services for 20-30 minutes one to four times per month. The parties would then litigate Plaintiffs' expert recommendation that DR be provided three to four occupational therapy sessions and socialization. Given that DR is no longer with FCS, time will be spent in the hearing determining what exactly Plaintiffs are seeking regarding DR.

Another example of a mini-trial is Plaintiff DK, who was also evaluated by one of Plaintiffs' "experts" who criticizes DK's IEP in terms of the alleged need for additional language therapy, more socialization counseling sessions, identification of allergy problems, and more occupational therapy. [*Id.* at Pg ID 1987-1988]. Again, the parties would spend substantial hearing time determining DK's status, DK's attendance, and whether DK should have occupational therapy one to two

10

times a month for 5-10 minutes per his IEP or whether he needs occupational therapy three to four times per week for 30-40 minutes as the "expert" recommends.

An additional example relates to Plaintiff ON, discussed in Plaintiffs' Motion. [Dkt. 62, Pg ID 1862-63. The parties will have to litigate what, if anything, FCS is allegedly not providing given that Plaintiffs' expert does not challenge ON's current speech and occupational therapy from FCS. [*Id*. at Pg ID 1931]. The parties will present evidence of ON's history, including PTSD stemming from neglect by ON's mother that led to custody by his grandmother, and prenatal exposure to cigarettes, drugs, and alcohol. ON's expert suggests an evaluation for a "program of cognitive rehabilitation and early intervention" and re-evaluation as he grows older and time will be spent during the hearing exploring what this has to do with providing Vineland II and WRIT screenings to all children in Flint and how follow-up tests as he is older relates to imminent harm that allegedly warrants injunctive relief. [*Id*. at Pg ID 1935].

As this Court previously noted, the Plaintiffs' "challenge is to the very framework and processes that the school district undertakes for every child rather than individuals contesting their IEPS." [Dkt 48, Pg ID 1629] The injunction hearing, therefore is supposedly about what has been done on the macro level regarding the lead situation as it relates to schools, and the overarching policies and procedures in place, and whether those polices are up to the occasion; or, as Plaintiffs

11

claim, whether an entirely new $100 million dollar system should be enacted by injunction. Plaintiffs' attempts to cheery-pick eight examples from the micro-level is neither relevant to the hearing and it is certainly more prejudicial than probative given the number of mini-trials that would be needed to present evidence on the subject. As such, any individual Plaintiff, parent or next friend, or expert and any evidence relating to the individual Defendants should be excluded from this hearing.

          Respectfully submitted:

          BUTZEL LONG, a professional corporation

          By: */s/ Brett J. Miller*
              Brett J. Miller (P68612)
          Donald B. Miller (P23419)
          Frederick A. Berg, Jr. (P38002)
          Sheldon Klein (P41062)
          Attorneys for Defendant FCS
          150 W. Jefferson, Suite 100
          Detroit, MI 48226
          313-225-7020
          miller@butzel.com
          berg@butzel.com
          Klein@butzel.com
          millerbr@butzel.com

          By: /s/ John L. Miller
          Timothy J. Mullins (P28021)
          John L. Miller (P71913)
          Giarmarco, Mullins & Horton, P.C.
          *Attorneys for Defendant Genesee ISD*
          101 W. Big Beaver Road, 10th Floor
          Troy, MI 48084-5280
          (248) 457-7020
          tmullins@gmhlaw.com

Dated: January 22, 2018      jmiller@gmhlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, I caused the electronic filing of the foregoing paper with the Court using the Court's ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Brett J. Miller*
Brett J. Miller (P68612)
millerbr@butzel.com
Attorney for FCS