# EXHIBIT A

# SETTLEMENT AGREEMENT

## I. INTRODUCTION

This Settlement Agreement ("Agreement") is entered into by and between the Plaintiffs (defined below) and the Defendants (defined below), hereinafter referred to individually as "Party" and collectively as "Parties," in the civil action known as *D.R., et al. v. Michigan Department of Education, et al.*, currently pending in the United States District Court for the Eastern District of Michigan (the "Court") as case number 2:16-cv-13694-AJT-APP (the "Case"). This Agreement provides for the resolution of Count 1, Systemic Violation 1 of Plaintiffs' complaint filed in the Case (Dkt. # 1), Plaintiffs' motion for a preliminary injunction filed October 16, 2017 (Dkt. # 62), and any other claims or allegations by Plaintiffs that Defendants have violated their "child find" obligations (together, the "Child Find claim"). This Agreement resolves the motion for preliminary injunction and underlying Child Find claim only; it does not settle the entire Case.

## II. PARTIES

The Plaintiffs are the named Plaintiffs, D.R., A.K., C.D.M., C.M., J.T., N.S., J.W., C.D., D.K., M.K., O.N., D.T., D.D., C.W., J.B., who filed the Case as minors through their parents identified in its Complaint (Dkt. # 1).

The Defendants are the Michigan Department of Education ("MDE"), Genesee Intermediate School District ("GISD"), and Flint Community Schools ("FCS").

## III.   DEFINITIONS

A.   **The Registry.**   The "Registry," known as the FlintRegistry, is the voluntary-enrollment, secure registry of Flint residents who were exposed to lead-contaminated water from the Flint water system from 2014-2015 that is being established through federal grant funding to Michigan State University (Grant # NUE2EH001370) in order to connect participants to programs designed to minimize the effects of lead on their health.

B.   **Genesee Health System.** The "Genesee Health System," or "GHS," is a Michigan Community Mental Health Authority that is the duly authorized Community Mental Health Services Program for Genesee County residents.

C.   **Neurodevelopmental Center of Excellence.** The "Neurodevelopmental Center of Excellence," or "NCE," is a proposed expansion of the existing neurodevelopmental evaluation center operated by GHS.

D.   **The Program.**   "The Program" is the program that is being planned and implemented by the Registry and NCE, the elements of which are set forth in Exhibit 1 to this Agreement.

## IV.  RECITALS

WHEREAS, Plaintiffs commenced the Case currently pending before the Court, seeking declaratory and injunctive relief;

WHEREAS, Plaintiffs allege in the Case that Defendants are in violation of the mandates of the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), as amended, 20 U.S.C. § 1400 *et seq.*, and its implementing regulations; § 504 of the Rehabilitation Act of 1973 ("Section 504"), as amended, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. § 12131 *et seq.*; and analogous provisions of Michigan law, Mich. Comp. Laws § 340.1701 *et seq.*;

WHEREAS, the Parties agree that resolution of the motion for preliminary injunction and the Child Find claim without the delay, expense, risk, and uncertainties of a lengthy evidentiary hearing, further motion practice, trial, and possible appeal is in the best interest of the Parties, the public, and judicial economy;

WHEREAS, after the voluntary exchange of information and arm's length settlement discussions, the Parties consider this Agreement to be a fair, reasonable, and equitable resolution of the motion for preliminary injunction and the Child Find claim;

3

BASED ON THE FOREGOING RECITALS AND THE TERMS AND CONDITIONS STATED HEREIN, the Parties agree as follows:

## V.     PROGRAM FOR SCREENING AND ASSESSMENT

1.      The Program, as defined above and the elements of which are set forth in Exhibit 1 to this Agreement, will be used to screen and assess children who may have been exposed to elevated levels of lead in the Flint water supply. The Program will be administered through the infrastructure of the Flint Registry platform and the NCE.

2.      Counsel for MDE have consulted with Michigan Department of Health and Human Services ("MDHHS") on whether the screening, assessment and treatment services generally described in Exhibit 1 may be covered by Medicaid, and MDHHS has confirmed that those services are reimbursable, subject to Medicaid's terms, conditions, and eligibility requirements.

3.      No later than July 15, 2018, MDE shall provide $4,139,571.51 in grants or funds to the Registry and NCE for planning and initial implementation of the Program.  All Parties recognize the availability of such funds may be subject to legislative approval.  MDE shall use best efforts to obtain legislative approval of funds if necessary.  If the Michigan Legislature fails to approve such funds, this Agreement may be declared null and void.

4.     Defendants shall not object to Plaintiffs' representatives participating in the Program planning process.

5.     Participation in the Program will require voluntary enrollment and consent by parents and guardians of eligible children for screening, assessments, and sharing of information with school and health care providers.  Defendants shall use their best efforts to encourage parents (a) to enroll in the Registry and (b) to complete screening and NCE-recommended assessments, and Defendants shall provide and assist with the necessary parental consent forms.

6.     Each Defendant shall provide, for a period of five years following the date this Agreement becomes effective, the equivalent of a full-time employee ("FTE") to facilitate and maximize Registry enrollment, screening, NCE-recommended assessment, parental consent, collaboration and communication with the Registry and NCE, and use of NCE assessment results by schools.  FCS's obligation under this paragraph is contingent upon available funding for the position through non-general funds, and FCS shall make reasonable efforts to continue to receive funding for five years.

7.     FCS shall operate, for a period of five years following the date this Agreement becomes effective, a Wellness Center or equivalent in every FCS school.  Wellness Center staff will assist parents, guardians, and students to enroll and participate in the Program, including obtaining necessary parental consent

forms.  FCS's obligation under this paragraph is contingent upon available funding for the operation of Wellness Centers through non-general funds.  FCS shall make reasonable efforts to continue to receive funding for five years.  MDE shall make reasonable efforts to attempt to secure continuing state funding to support the operation of Wellness Centers for five years.

8.      FCS and GISD shall make available electronic devices in each of their respective schools for use by parents and guardians to enroll their eligible children in the Registry.

9.      FCS, with support and supervision from GISD and MDE, shall provide training and professional development to administrators, teachers, and staff ("educators") working directly with students on (a) the Program's process for Registry enrollment, screening, and NCE assessment, (b) how to recognize when a student might have a disability or other deficit, including those that can be caused or exacerbated by lead, and (c) how to identify and report any such student to an FTE equivalent (see para. V.6) or Wellness Center staff (see para. V.7). FCS will provide each educator with a form that the educator can fill out in which the educator can identify students whom the educator believes should be referred to the Program.

10.    FCS and GISD shall request that NCE establish protocols to provide information to parents and guardians after an NCE assessment is performed so that they may request a special education evaluation.

11.    FCS and GISD shall establish protocols, after obtaining parental or guardian consent and a request for special education evaluation, to access NCE assessment results.

12.    As part of its evaluation and reevaluation process under the IDEA, FCS, with support and supervision from GISD and MDE, shall review and document all screening and NCE assessment results that it has been provided in accordance with 34 C.F.R. 300.304-300.311.

13.    Defendants remain responsible for fulfilling their child find obligations under IDEA, Section 504, and applicable state law. Nothing in the above provisions absolves Defendants of duties under IDEA, Section 504, and applicable state law to identify, locate, and evaluate all students with suspected disabilities.

## VI.    REPORTING AND DISCLOSURES

1.    Every six months for a minimum of three years following the date this Agreement becomes effective, MDE shall conduct a selective review or audit of random FCS student files for students who were assessed by NCE.  For the selected files, MDE shall determine if NCE assessments were reviewed by FCS,

whether an IEP was completed, and if so what category of disability made the student eligible for an IEP.  Following each six-month review or audit, MDE shall provide Plaintiffs with a report specifying the results.

2.      Every six months and for a minimum of two years following the date this Agreement becomes effective, GISD shall provide Plaintiffs with a report specifying (1) the number of Multidisciplinary Evaluation Team ("MET") evaluations completed by GISD and FCS, and (2) the resulting number of students determined eligible for special education services.

## VII.   ATTORNEYS' FEES AND COSTS

Plaintiffs reserve the right to seek attorneys' fees and costs related to their Child Find claim following entry of a final judgment at the conclusion of the Case. Defendants agree that this Agreement does not constitute a waiver of attorneys' fees and costs, and Plaintiffs agree that this Agreement does not waive Defendants' right to argue that Plaintiffs are not prevailing parties for purposes of attorneys' fees.

## VIII.  STIPULATED TERMS OF PARTIAL DISMISSAL

1.      Upon execution of this Agreement through the signatures of the Parties or their authorized representatives below, the Parties shall submit the Agreement to the Court along with a stipulation in the form attached hereto as

Exhibit 2, and, if the Court requests, a proposed or stipulated order reflecting the stipulated terms enumerated in Exhibit 2.

2. The Parties' stipulation to dismiss Plaintiffs' Child Find claim and deny as moot Plaintiffs' motion for preliminary injunction is contingent upon the Court making this Agreement part of the record in the Case and entering an order that (a) approves the Agreement as fair, reasonable, and adequate, consistent with the public interest, and in furtherance of the objectives of the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), as amended, 20 U.S.C. § 1400 *et seq.*, and its implementing regulations; (b) finds that the Agreement is in each of the minor parties' best interest; (c) incorporates the Agreement by reference; and (d) expressly retains jurisdiction to enforce the Agreement according to its terms. If the Court declines to place the Agreement on the record, declines to approve the Agreement, declines to incorporate the terms of this Agreement in an order, or declines to retain jurisdiction to enforce it, this Agreement and any stipulation pursuant thereto may be declared null and void.

3. This Agreement does not require dismissal of the entire Case or Plaintiffs' claims other than the Child Find claim.

## IX. EFFECTIVE DATE

This Agreement becomes effective when the Court enters an order incorporating the terms of this Agreement, retaining jurisdiction to enforce it,

dismissing Plaintiffs' Child Find claim with prejudice, and denying as moot Plaintiffs' motion for preliminary injunction pursuant to the Parties' stipulation.

## X.      DISPUTE RESOLUTION AND JUDICIAL ENFORCEMENT

1.      The Court has jurisdiction to enforce this Agreement.

2.      The Parties shall make all reasonable efforts to resolve disputes and disagreements regarding the meaning of, compliance with, and/or implementation of this Agreement informally and in good faith prior to seeking relief from the Court.

3.      If a Party has a dispute concerning the meaning of, compliance with, and/or implementation of this Agreement, that Party will send written notice to all other Parties specifying the nature of the dispute.  Within 14 days of the date of transmission of written notice, the Parties shall meet and confer in a good-faith attempt to resolve the dispute without soliciting the Court's involvement.  As part of the meet and confer, the Parties shall comply with reasonable requests from another Party or Parties for information and documents related to the dispute, and shall, upon request by another Party or Parties, provide reasonable access to client representatives with knowledge related to the dispute.

4.      If the Parties are unable to resolve any dispute or disagreement pursuant to the process set forth above, any Party or Parties may file a motion with the Court to enforce this Agreement.  Any Party that intends to file a motion to

enforce the Agreement shall provide all other Parties written notice of such intent at least 7 days prior to filing any such motion.

## XI.   MODIFICATION

This Agreement contains the entire agreement of the Parties with regard to the matters referenced herein and supersedes any prior oral or written communications, understandings or statements between the Parties as to such matters. The Parties may modify the terms of this Agreement by written agreement, subject to Court approval, which approval must include the findings described in subparts a and b of paragraph VIII.2 above.  To effectuate such modification, the Parties shall file a joint stipulation and notice to the Court.  No modification of this Agreement may be made absent joint stipulation of all Parties and an order of the Court.

## XII.  RELEASES

Except as otherwise provided in this Agreement, it is the intention of each of the Parties that this Agreement shall be the full and final accord and satisfaction and release of any and all dealings and accounts of any kind or nature between the parties for the motion for preliminary injunction and Child Find claim.  Each party does hereby for himself, herself, or itself and for each and all of their agents and successors in interest, release and absolutely forever discharge the other and their

11

agents and successors in interest of and from any and all claims, damages,

liabilities, suits, costs, and causes of action of every kind and nature whatsoever,

whether now known or unknown, which the parties may have against the other

arising from the motion for preliminary injunction and Child Find claim through

the date of this Agreement.

The released matters shall include any and all claims known and unknown

related to or arising from the motion for preliminary injunction and Child Find

claim as referenced in this Agreement. Without in any way limiting the generality

of the general releases contained in the foregoing paragraph, each of the Parties

does hereby release and absolutely and forever discharge each of the others from

all matters arising out of or in connection with the allegations set forth in this

Agreement.

The foregoing release and discharge pertains to the motion for preliminary

injunction and the Child Find claim only; it is not a release or discharge of the

entire Case or of Plaintiffs' claims other than the Child Find claim.  Additionally,

as set forth in Paragraph VII, Plaintiffs reserve their right to seek attorneys' fees

and costs related to their Child Find claim and do not release or discharge

Defendants from any obligation they may be found to have to pay attorneys' fees

and costs.

## XIII. SIGNATORIES AND COUNTERPARTS

1.    Each signatory to this Agreement certifies that he or she is fully
authorized to enter into this Agreement, to agree to its terms and conditions, and to
execute and legally bind the Party he or she represents.

2.    This Agreement may be executed in counterparts.

[signatures to follow]

Plaintiffs D.R., A.K., C.D.M., C.M., J.T., N.S., J.W., C.D., D.K., M.K., O.N., D.T.,
D.D., C.W., J.B.

BY: _____
Its _Counsel for Plaintiffs_
Date: _4/3/18_

Flint Community Schools

BY: _____
Its _____
Date: _____

Genesee Intermediate School District

BY: _____
Its _ATTORNEY_
Date: _4/3/18_

Michigan Department of Education

BY: _____
Its _STATE SUPERINTENDENT_
Date: _3/21/18_

13

## XIII. SIGNATORIES AND COUNTERPARTS

1.     Each signatory to this Agreement certifies that he or she is fully
authorized to enter into this Agreement, to agree to its terms and conditions, and to
execute and legally bind the Party he or she represents.

2.     This Agreement may be executed in counterparts.

[signatures to follow]

Plaintiffs D.R., A.K., C.D.M., C.M., J.T., N.S., J.W., C.D., D.K., M.K., O.N., D.T.,
D.D., C.W., J.B.

BY:_____
Its _____
Date: _____


Flint Community Schools

BY: *Deana Wright*
Its *FCS Board President*
Date: *4/5/2018*


Genesee Intermediate School District

BY:_____
Its _____
Date: _____


Michigan Department of Education

BY: _____
Its *STATE SUPERINTENDENT*
Date: *3/21/18*

13

# EXHIBIT 1

The Flint Registry ("Registry") and Genesee Health System/Neurodevelopmental Center of Excellence ("GHS" or "NCE") are working to plan and implement  a program as set forth below (hereinafter referred to as "the Program"), anticipating that it will be operational by Fall 2018.  The parties acknowledge that neither the Registry nor GHS are parties to the lawsuit and cannot be bound by a settlement agreement.  Further, the parties acknowledge that there is a planning and startup phase to the Program lasting until September 2018 in which additional details will be determined ("the planning phase").  The Program, subject to development in the planning phase by the Registry and GHS/NCE, is envisioned to be as follows.

1. **Overall Description of Program**

During the planning phase, the Registry and NCE will work to finalize proposed evaluations, data sharing, and other details of the Program. The goal of the Registry is to connect those affected by the lead situation with other resources in the community to improve health and development outcomes.  Through a voluntary consent process, the children of Flint will be screened using evaluative tools (caregiver questionnaires) developed by local and national experts to evaluate children in domains of development that may be impacted by lead exposure. The evaluation data will be centrally housed in the Registry's CDC funded secure database.

The NCE is a proposed expansion of the existing neurodevelopmental evaluation center operated by Genesee Health System in partnership with Hurley Children's Hospital.  Genesee Health System is the Community Mental Health Services Program for Genesee County residents.  The GHS evaluation center is located in Flint, currently providing autism spectrum disorder evaluations, as well as operating a Fetal Alcohol Syndrome Disorder Diagnostic Center of Excellence.  The Program will expand specialty evaluation services by providing medically necessary,  comprehensive  neuropsychological  and  psychological  assessments  to  referred

2

children in coordination with the Flint Community Schools, the Genesee Intermediate School District, the Flint Registry, and primary care physicians. Specialists in the areas of child neuropsychology and child clinical psychology will provide and interpret these assessments to help identify cognitive, behavioral, and social-emotional needs of referred Flint children, and the assessments will result in referral and linkage to needed services and resources.

It is anticipated that there will be a low threshold for referral to the NCE. A question on the Registry intake will ask whether further referral to NCE is requested regardless of the outcome of the Registry evaluations. The Registry will facilitate referrals to NCE.

After NCE evaluation, a parent or guardian can, upon request for a special education evaluation, utilize the results of these evaluations to aid school district teams in evaluating children for special education services where needed.

## 2. Registry Eligibility and Scope of Program

A final definition of eligibility is to be determined, but the initial Program is designed for students enrolled in Flint Community Schools and Genesee Intermediate School District, in grades K-9. It is, however, anticipated that all those who were impacted by the Flint water situation will be eligible for the Program.

## 3. Screening/Assessments

Specific screenings and assessments at the Registry and NCE will be finalized during the planning phase. During the planning stage, the NCE team will work with school partners to ensure assessments meet the needs of school special education determinations to eliminate the need for schools to provide additional screening that could already have been conducted by NCE. As per Flint Registry protocol, all children under 5 years of age will automatically be referred to Early On for further evaluation.

3

**4. Referrals to NCE**

The Registry will primarily facilitate referrals to NCE. However, primary care physicians may refer to NCE as well as other medical referrals. For referrals that do not originate with the Registry, NCE will use best efforts to obtain consent to enroll these children in the Registry at the time of NCE service.

**5. Follow-up Testing**

In 2020 to 2021, the Registry will conduct follow-up tests for all those previously enrolled in the Registry. NCE will utilize follow-up services as clinically necessary.

**6. Data Sharing between Registry-NCE-FCS/GISD**

During the planning phase, details of data sharing between the Registry, NCE, school partners and other stakeholders will be finalized. It is anticipated that current electronic medical record (EMR) systems will be utilized such as Epic or Epic Care Link.

Further, during the planning phase, the data points to be collected by the Registry and the NCE will be determined. These data points will include, at a minimum:

- Number of referrals by the district to the Registry;
- Number of referrals to the NCE;
- Number of NCE assessments completed and what type;
- Number of assessments accessed by Flint Community Schools.

It is currently envisioned that parents/guardians will be asked, among other things:

- Whether they would like further referrals to NCE
- School district or school of child
- Whether child has current IEP
- Whether child has current 504 plan

4

5

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

D.R., as a minor through parent and
next friend Dawn Richardson, et al.,

      Plaintiffs,                       No. 16-cv-13694

vs.                               Hon. Arthur J. Tarnow

Michigan Department of Education,     Mag. J. Anthony P. Patti
Genesee Intermediate School District,
and Flint Community Schools,

      Defendants.
_____/

## STIPULATION REGARDING PARTIAL SETTLEMENT
## AND REQUEST FOR HEARING

      The parties in the above-captioned matter, having entered an agreement that

resolves Plaintiffs' pending motion for preliminary injunction (Dkt. # 62) and the

"child find" portion of this case, hereby stipulate to the Court's entry of an order

that:

    (a)    approves the terms of the Settlement Agreement attached hereto
           as Exhibit A as fair, reasonable, and adequate;

    (b)    incorporates by reference the terms of the Settlement
           Agreement;

    (c)    expressly retains jurisdiction to enforce the Settlement
           Agreement according to its terms;

    (d)    dismisses with prejudice Plaintiffs' claim under Count 1,
           Systemic Violation 1, of Plaintiffs' Complaint along with any

other claims or allegations by Plaintiffs that Defendants have violated their "child find" obligations; and

(e)     denies as moot Plaintiffs' motion for preliminary injunction (Dkt. # 62).

The parties further request a hearing on this Stipulation and the attached Settlement Agreement.

Respectfully submitted,


By:  /s/ Gregory G. Little

Daniel S. Korobkin (P72842)          Gregory M. Starner
Kristin L. Totten (P72942)           Lindsay M. Heck
Michael J. Steinberg (P43085)        Walter A. Ciacci
Kary L. Moss (P49759)                White & Case LLP
American Civil Liberties Union       1221 Avenue of the Americas
   Fund of Michigan                  New York, NY 10020
2966 Woodward Ave.                   (212) 819-8200
Detroit, MI 48201                    gstarner@whitecase.com
(313) 578-6824                       lindsay.heck@whitecase.com
dkorobkin@aclumich.org               walter.ciacci@whitecase.com
ktotten@aclumich.org
msteinberg@aclumich.org
kmoss@aclumich.org                   *Attorneys for Plaintiffs*

David G. Sciarra
Gregory G. Little
Jessica A. Levin
Education Law Center
60 Park Place, Suite 300
Newark, NJ  07102
(973) 624-1815
dsciarra@edlawcenter.org
glittle@edlawcenter.org
jlevin@edlawcenter.org

3

By:  /s/ Donald B. Miller

Donald B. Miller (P23419)
Brett J. Miller (P68612)
Frederick A. Berg, Jr. (P38002)
BUTZEL LONG
150 W. Jefferson, Suite 100
Detroit, MI 48226
313-225-7020
miller@butzel.com
millerbr@butzel.com
berg@butzel.com

*Attorneys for Defendant Flint Community Schools*

By:  /s/ Timothy J. Mullins

Timothy J. Mullins
John Miller
GIARMARCO, MULLINS & HORTON, PC
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
jmiller@gmhlaw.com

*Attorneys for Defendant Genesee Intermediate School District*

By:  /s/ Timothy J. Haynes

Timothy J. Haynes (P41196)
Travis M. Comstock (P72025)
Richard S. Kuhl (P42042)
Margaret A. Bettenhausen (P75046)

Nathan A. Gambill (P75506)
Zachary C. Larsen (P72189)
Assistant Attorneys General
Michigan Department of Attorney
General
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
haynest3@michigan.gov
comstockt@michigan.gov
kuhlr@michigan.gov
bettenhausenm@michigan.gov
gambilln@michigan.gov
larsenz@michigan.gov

*Attorneys for Defendant Michigan
Department of Education*

Dated: _____, 2018

5